LANDRY, Judge.
On remand from the Supreme Court, Guilbeau et al. v. Liberty Mutual Insurance Company, La., 338 So.2d 600 (1976), this matter involves: (1) the tort claims of a *80 widow on behalf of herself and minor children, for the death of their husband-father decedent, who was killed when struck by a dump truck while at work; (2) the alleged coverage of the truck driver under policies covering corporate members of a joint venture to whom the truck and driver had been leased by the truck driver’s general employer; (3) the quantum to be awarded the widow and children in the event the alleged policy coverage be found; (4) the apportionment of $10,000 found by the Supreme Court to be due the widow and children by the insurer of the dump truck involved in the accident; and, (5) the amount due, from the ultimate award, to certain intervenors as compensation insurers of the joint venture members.
John Albert Guilbeau, husband of plaintiff Mary Alice Guilbeau and father of the minors John Albert Guilbeau, III, Kimble Keith Guilbeau, Felicia Marie Guilbeau, Kevin Dewane Guilbeau and William Fitz Guilbeau, was killed on August 11, 1974, when struck by a dump truck being operated by Marion Lee Higgins, which vehicle was owned by J. B. Higgins and insured by Cotton Belt Insurance Company (Cotton Belt). At the time of the accident, the truck and driver were leased by its owner to Gaines P. Wilson & Son (Wilson) and E. A. Caldwell Contractor, Inc. (Caldwell), which concerns were engaged in the joint performance of a highway improvement project pursuant to a contract with the Department of Highways, State of Louisiana. Wilson’s workmen’s compensation and automobile liability insurance was carried by Liberty Mutual Insurance Company (Liberty); Caldwell’s similar coverage was carried by The Continental Insurance Companies (Continental).
Wilson was prime contractor on the construction project. By contractual arrangement, Wilson and Caldwell shared the work, responsibility, and profits, in such manner as to make their participation therein a joint venture. For the details of the arrangement, see the opinion of this court, 324 So.2d 571.
Decedent Guilbeau was hired as a mechanic by Caldwell’s foreman, Savoy, the day before the accident. Savoy, and a crew under him, was primarily engaged in operating an asphalt spreader to which hot asphalt was being hauled by truck. On the day of the accident, decedent was working on or around the spreader, and the leased truck and its driver were engaged in hauling asphalt to the same machine. Decedent was killed when he was struck from behind, while walking toward the spreader, by the leased truck which was backing toward the spreader to deliver a load of asphalt.
Plaintiffs sued Wilson, Liberty, Caldwell, Continental, Cotton Belt, Marion Lee Higgins, J. B. Higgins, Billy Works, Caldwell’s Supervisor, Alex Manuel, a Caldwell employee, Morris Brown, a Caldwell employee, and all officers, directors and safety officers of Wilson and Caldwell. Plaintiffs alleged inter alia, that Marion Lee Higgins was insured by Liberty and Continental pursuant to comprehensive automobile liability insurance policies issued by said insurers to their respective insureds. Liberty and Continental intervened in plaintiffs’ suit seeking recovery of workmen’s compensation benefits paid plaintiffs from the time of the accident to the time of suit.
The trial court rejected plaintiffs’ demands in tort against Wilson, Liberty, Caldwell, and Continental, on the ground that neither Caldwell nor Wilson were negligent and that, as Guilbeau’s joint venture employer, said concerns and their insurers were liable to plaintiffs only for workmen’s compensation benefits. Plaintiffs’ demands against J. B. Higgins, Marion Lee Higgins, all other individual defendants, and Cotton Belt, were rejected by the trial court on a finding that decedent was contributorily negligent.
On appeal we affirmed that portion of the trial court decree which held that Wilson and Caldwell were engaged in a joint adventure and as such, they and their insurers were liable only for workmen’s compensation benefits, because decedent was an employee of the joint venture. We also held that the truck driver, Higgins, was the *81 borrowed servant of the joint enterprise, and as such, neither his general employer, nor the insurer of his general employer was liable for his tort actions in this instance. We pretermitted the matter of the alleged contributory negligence of decedent as regards the demands against all the above named individuals and corporate employees on the ground that said parties were neither cited nor was issue joined as to them. We rejected plaintiffs’ recovery under the automobile liability insurance coverage policies issued by Liberty and Continental to Wilson and Caldwell, on finding that the policies afford individual coverage only as to the use of company owned vehicles and therefore afforded no coverage to Marion Lee Higgins in the use of the truck belonging to J. B. Higgins.
The Supreme Court granted certiorari and found: (1) No employee of either Caldwell or Wilson was guilty of negligence causally related to decedent’s death; (2) Marion Higgins, the truck driver, was not the employee of either Caldwell or Wilson; (3) The dump truck and its driver were leased by Higgins to the joint venture composed of Caldwell and Wilson; (4) Neither Caldwell nor Wilson was responsible for the negligence of the truck driver, Marion Lee Higgins; (5) Plaintiffs’ remedy against Caldwell and Wilson is for workmen’s compensation benefits only; (6) Caldwell’s and Wilson’s insurers, Continental and Liberty, are not liable to plaintiffs under their general comprehensive liability policies; (7) Marion Lee Higgins, the truck driver was liable to plaintiffs under the last clear chance doctrine; and, (8) Cotton Belt, liability insurer of J. B. Higgins, is liable to plaintiffs in its policy limits of $10,000.00.
The Supreme Court was of the view that policies issued by Liberty and Continental to Wilson and Caldwell, respectively, and designated “Comprehensive Automobile Liability Insurance” could conceivably cover Marion Lee Higgins under certain insuring provisions contained therein.
We address this coverage question as directed. The mentioned policies contain the following similar and pertinent provisions:

“Exclusions

This insurance does not apply to bodily injury or property damage arising out of (1) a non-owned automobile used in the conduct of any partnership or joint venture of which the insured is a partner or a member and which is not designated in this policy as a named insured .

“Persons Insured

(a) the named insured;

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission .
“None of the following is an insured:
(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;
(ii) the owner or lessee (of whom the named insured is a sublessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee.

“Additional Definitions

‘hired automobile’ means an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured . ‘non-owned automobile’ means an automobile which is neither an owned nor a hired automobile.”
We understand the rationale of the Supreme Court decision to be that since the exclusion clause is specifically made applicable only to non-owned automobiles used in the conduct of a joint venture in which the insured is engaged, the exclusionary clause might be interpreted to indicate coverage could be applicable to a hired vehicle used in a joint venture. We so conclude because the policy definition of “non-owned automobile” excludes a “hired automobile”, *82 whereas the exclusionary clause refers only to a non-owned vehicle.
The Supreme Court indicated that Clause (c) under “persons insured”, above, is sufficiently broad to afford coverage of the driver of the truck, “assuming that the truck thus furnished the joint venture (of which Wilson and Caldwell are members) was a ‘hired automobile’ furnished to the joint venture and thus ‘used in behalf of’ the respective named insureds”.
Because, however, both policy definitions of “non-owned automobile” expressly exclude a “hired automobile”, it is necessary to determine whether the dump truck in question was a “hired automobile” within the definition of the term “hired automobile” as contained in each policy. The trial court, this court and the Supreme Court found Higgins’ truck and driver were leased to the joint venture. We adhere to this determination.
We find the above quoted policy definitions of “hired automobile” to be substantially in accord with our codal definition of the contract of lease or hire. In this regard, we find the following codal articles pertinent:
“LSA-C.C. Article 2669
Lease or hire is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price.
“LSA-C.C. Article 2674
To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him.
“LSA-C.C. Article 2677
He who grants a lease is called the owner or lessor. He to whom a lease is made is called the lessee or tenant.”
Considering that the Higgins truck is conclusively shown to have been leased to the joint venture of Wilson and Caldwell, and was under contract on behalf of said parties to the joint venture, the truck was clearly a hired vehicle under our statutory definition of hiring. It was also a hired vehicle within the meaning of the policy definitions of the term, inasmuch as it was a vehicle not owned by either insured, but was being used on behalf of each insured as a member of the joint venture.
In considering the “persons insured” provisions of the policies, the Supreme Court referred solely to paragraph (i) which excludes from coverage an employee with respect to bodily injury to a fellow employee injured in the course of his employment. In so doing, the Supreme Court commented:
“[CJonsidering that the decedent Guil-beau was hired by the joint venture (as the court of appeal held) or by Caldwell (as his widow contends), it is apparent that a serious doubt exists as to whether Guilbeau could be a ‘fellow employee’ of the truckdriver (employed by and paid by Higgins, not by the joint venture or by Caldwell) for purposes of an exclusion clause in each policy which provides: ‘None of the following is an insured: (i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment * * *.’ (Italics ours.) Cf. Pullen v. Employers’ Liability Assurance Corp., 230 La. 867, 89 So.2d 373 (1956).”
We note, however, the Supreme Court made no reference whatsoever to paragraph (ii) which expressly excludes coverage of the owner or any agent or employee of the owner of a hired automobile. We believe paragraph (ii), above, is dispositive of the coverage issue, thus eliminating the necessity of determining whether decedent and the truck driver were co-employees.
In reaching our conclusion on the question of coverage, we are mindful of the rule applicable to interpretation of exclusionary clauses, as set forth by the Supreme Court in Pullen v. Employers’ Liability Assurance Corp., 230 La. 867, 89 So.2d 373 (1956), as follows:
“The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in *83 view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.”
We are also mindful of the rule that ambiguities in insurance policies are to be construed in favor of the insured and against the insurer. Jennings v. Louisiana & Southern Life Insurance Company, 280 So.2d 291 (La.App. 1st Cir. 1973). Doubt as to the meaning of policy provisions are to be construed in favor of coverage and the insured. Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116 (1968).
Plaintiffs contend it is anomalous and conflicting and therefore ambiguous to provide coverage of a hired vehicle (which it is contended results from the failure to include a hired automobile within the term “Exclusions”), and then take away such coverage depending upon who is driving such a vehicle as provided in paragraph (ii).
We find no such anomaly. Neither do we find these provisions ambiguous or conflicting. In our view, paragraph (ii) is a clear and unambiguous extension of the exclusions concerning which the insurer declined to offer coverage. We can readily appreciate that an insurer might be willing to insure a hired vehicle being operated by its insured or an agent or employee of its insured, and at the same time be loath to insure such a vehicle being operated by its owner or an employee or agent of its owner. We think the difference in the risks involved are obvious.
The Supreme Court found that the truck driver Higgins, was an employee of J. B. Higgins d/b/a Higgins Trucking Company “employed by and paid by Higgins, not by the joint venture or by Caldwell”. We are bound by this determination. It follows that the truck driver was not covered under the automobile liability policies in question because he was driving a hired vehicle as an employee of the vehicle’s owner, and not as employee of either insured.
Finding no coverage under the automobile liability policies of Liberty and Continental, there remains the issue of the amount due intervenors for Workmen’s Compensation benefits paid decedent’s widow and surviving minor children.
The Supreme Court awarded judgment in favor of plaintiffs and against Cotton Belt in the sum of $10,000. We are mandated to apportion this amount between Liberty and Continental, who have stipulated that each has contributed 50% of workmen’s compensation benefits paid plaintiffs since decedent’s death on August 11, 1971. The record discloses that Liberty and Continental have paid compensation benefits of $49.00 weekly since August 11, 1971, an aggregate in excess of the $10,000 for which Cotton Belt is liable. Considering our determinations herein, there is no need to apportion the amount to be awarded Liberty and Continental.
It is ordered, adjudged and decreed that plaintiffs’ demands against Liberty and Continental pursuant to the Comprehensive Automobile Liability Policies issued by said insurers to Wilson and Caldwell are denied on the ground that said policies do not cover Marion Lee Higgins under the circumstances of this case.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff Mary Alice Guilbeau, individually and on behalf of her above named minor children, against Cotton Belt in the sum of $10,000, with legal interest thereon from date of judicial demand, until paid.
*84 It is further ordered, adjudged and decreed that there be judgment herein in favor of intervenors Liberty and Continental and against plaintiffs Mary Alice Guilbeau and her above named minor children and Cotton Belt, in the sum of $10,000, together with legal interest thereon from date of judicial demand, until paid, said sum of $10,000 to be shared by Liberty and Continental in equal portions, all costs of these proceedings, on trial and appeal to be paid by Cotton Belt.
It is further ordered, adjudged and decreed that in all other respects the judgment of this court rendered in La.App., 324 So.2d 571, is affirmed.
AMENDED AND AFFIRMED.