DOMENGEAUX, Judge.
Dora H. Brady and Stephen Brady commenced these proceedings to recover the damages they sustained as the result of an injury Dora Brady suffered while at a street dance sponsored by the Pinecrest State School for its residents. The Bradys named as the defendant, the State of Louisiana, in particular, the Department of Health and Human Resources, the state agency responsible for the Pinecrest School. The Trial Court rendered judgment in favor of the State, dismissing the Bradys’ suit at their cost. The Court, in oral reasons, held that the State had not breached any duty imposed for the benefit of the Bradys and that it was, therefore, not negligent in its supervision of the street dance or the residents.
The Pinecrest State School is a controlled residential community administered by the State to provide living facilities for mentally handicapped individuals. The School, in November of 1984 when Brady suffered her injury, had approximately 1620 residents, of which eighty-six percent were profoundly or severely mentally handicapped and fourteen percent were moderately or mildly handicapped. Approximately 500 of the 1620 residents suffered from convulsive disorders which caused grand mal and petit mal seizures.
The premise underlying the administration of the Pinecrest School, as stated by Coats Stucky a Mental Retardation Facility Administrator IV, and the Superintendent of Pinecrest in November of ’84, is to provide the residents with a protected living environment without totally restricting their activity. The residents live in cottage dormitories in groups not exceeding 24 persons. In accordance with Medi-cade requirements, three supervisory personnel, one Resident Training Specialist No. 2 (RTS-II) and two Resident Training Specialists (RTS’s), are responsible for the residents around the clock.
On the evening of November 7,1984, the residents of Pinecrest were enjoying their annual street dance on the school grounds. The event, which consisted of a band and concession booths or tables, was open to all Pinecrest residents, employees, both on and off-duty, and their families. Approximately 400 of the residents participated in the dance.
Dora Brady, the plaintiff, a clerk-typist-II at Pinecrest, was off-duty on the evening of November 7th and chose to participate in the festivities. Brady was injured about 6:35 or 6:45 that evening when she was unexpectedly struck from the rear by a person she described as a large light-skinned woman. Brady fell to the ground landing on her left foot causing it to break. The person who caused Brady to fall, a resident of Pinecrest, fell on top of her.
The resident who fell on Brady was Ber-die Edwards. Edwards, a long time resident of Pinecrest, was a woman in her 60’s. She was moderately mentally handicapped and was one of the many residents who experienced seizures.
Lemroy Culbert, Jr., an equipment operator at Pinecrest, was on duty the evening of the street dance and was responsible for patrolling the dance area. Culbert testified that he did not have an unobstructed view of the incident but, he did see Brady and Edwards fall to the ground. He testified that from his position in the crowd, approximately fifteen feet from the women, it *104 appeared that Edwards either intentionally hit or involuntarily fell against the back of Brady’s legs causing Brady to fall backwards.
Culbert, upon seeing the incident, went to the assistance of the women. He found both Brady and Edwards on the ground in an area partially paved and partially covered with gravel. Culbert testified that he permitted Edwards to lay on the ground for a short period of time because she was having a seizure. He was confident in his assessment that Edwards had experienced a seizure because her eyes were closed and she appeared as she had on the previous occasions when he had seen her experience seizures.
Culbert also testified that his instructions on the evening of the street dance were to return any resident who experienced one seizure to his or her dormitory room and that any resident who experienced three seizures was to be brought to the hospital. He did not state how many residents, if any, were brought to the hospital but, he did state that many residents experienced seizures.
The testimony of Paul Murphy, another employee of Pinecrest who assisted the women after their fall, was entered into the record by way of a stipulation. The parties stipulated that Murphy, who was approximately six to eight feet from the women, did not see what transpired, but did assist the women after the incident. The parties also stipulated that Murphy believed Edwards had experienced a seizure.
Hazel Paige, the RTS-II of Cottage 215, Edwards’ cottage, testified that most of the twenty-one or twenty-three residents of Cottage 215 attended the dance. Paige stated that a short time before Brady was injured, Edwards, apparently because of a sense of insecurity, chose to stay close to another Pinecrest employee. Paige then told the Court that subsequent to the employee being called away to assist at a concession stand, Edwards chose to remain close to her (Paige). Paige stated that Edwards held her (Paige’s) arm and that she assisted Edwards in the purchase of a sandwich and a drink. Paige then testified that Edwards, who was free to go about the facilities as she chose, let go of her arm and walked about fifty feet across the street from where the two of them were originally standing. Paige clearly explained that Edwards did not require one-on-one supervision and that she chose to remain close to her and the other Pinecrest employee entirely by her own choosing.
Paige testified that about two or three minutes after Edwards left she heard someone say that Edwards had experienced a seizure. When she arrived at the scene she saw Edwards, but did not believe that she had experienced a seizure. Paige, who was personally familiar with Edwards, stated that Edwards might not have a seizure for three or four months, but then could experience two in one month.
On appeal, the Bradys contend that the Trial Court erred in concluding that the State was not negligent. The Bradys, in essence, maintain that the law imposed on the State the duty of supervising the Pine-crest residents in a manner that would prevent them from injuring off-duty employees attending the street dance. The Bradys argue that the State breached its duty when it failed to prevent Edwards from injuring Dora Brady. The Bradys additionally maintain that the State should be found strictly liable in accordance with La.Civ.Code arts. 2317 (1870) and 2319 (1870). We conclude, as did the Trial Judge, that the State did not breach any duty imposed for the benefit of the Bradys and that it would be inappropriate to impose strict liability in this instance. We will, therefore, affirm the judgment of the District Court.
In Louisiana, in suits such as the instant case in which recovery is founded on allegations of negligence, the duty-risk analysis is utilized. The Louisiana Supreme Court in Forest v. State, Louisiana Department of Transportation and Development, 493 So.2d 563 (La.1986) recently restated the elements of the duty-risk analysis. The elements, as stated by the Forest Court, are: (1) Was the defendant’s conduct a cause in fact of the plaintiff’s injury? (2) Did the defendant owe the plain *105 tiff a legal duty which encompassed the particular risk of harm to which the plaintiff was exposed? (3) Did the defendant breach its legal duty? and (4) Did the plaintiff sustain any damage? See also, La.Civ. Code art. 2315 (1870) (as amended); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
We may immediately proceed to the question of the legal duty imposed because causation-in-fact is not at issue. We believe the issue is whether the State owed Dora Brady a duty to protect her from being unexpectedly knocked to the ground by a properly supervised moderately mentally handicapped resident experiencing a seizure, whose history of seizures reveals that they are infrequent and unpredictable. We do not believe the law imposed such a duty on the State.
In determining the scope of the State’s duty, we surveyed the policy considerations announced in Clomon v. Monroe City School Board, 490 So.2d 691 (La.App. 2nd Cir.1986). The Second Circuit in Clomon reviewed the following considerations: (1) the ease of association between the risk and the particular injury at issue; (2) the administrative burden that could result from recognizing the scope of the duty; (3) the economic ability of each party to liquidate the loss; (4) the moral culpability of each party; (5) the type, and the social and economic utility of the defendant’s activity; and (6) the historical development of either or both the statutory law and the jurisprudence.
The evidence indicates that Edwards knocked Brady to the ground as the result of an involuntary seizure that could not have been predicted. Absent just short of sheltering Edwards away from all human contact, no amount of supervision could have prevented Brady’s injury.
The fact that this incident occurred during the Pinecrest street dance is not significant. The two primary factors which combined to cause the injury were the fact that Brady was struck from the rear and the unpredictability of Edwards’ seizures. Brady’s injury, considering the contributing factors, could have easily occurred at any time.
The State, through its administration of the Pinecrest School, was performing a valuable and necessary function. The State’s ability to provide this service should not be hampered by liability which in this case does not arise because the State was properly fulfilling its responsibilities.
The plaintiffs additionally maintain that should we decline to find for them on their negligence theory, we should render judgment for them based on the theory of strict liability. The Bradys urge that we review La.Civ.Code. arts. 2317 (1870) and 2319 (1870) and conclude that the circumstances which the State permitted to exist at the time of the incident created an unreasonable risk of harm dictating the imposition of strict liability.
Article 2317, Louisiana’s statutory basis for imposing strict liability, provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
One of the modifications of art. 2317 is art. 2319, which provides, “[T]he curators of insane persons are answerable for the damage occasioned by those under their care.”
The Louisiana Supreme Court in Entrevia v. Hood, 427 So.2d 1146 (La.1983), citing Loescher v. Parr, 324 So.2d 441 (La.1976), stated that the principal of fault underlying articles 2317 and 2322 (1870) was the same as that underlying article 2319. The Court then provided the following summarization on the theory of strict liability:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus created, despite the fact that no personal *106 negligent act or inattention on the former’s part is provided. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognized that the injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. The legal fault thus arising from our code provisions has sometimes been referred to as strict liability. Entrevia, supra at 1148; quoting Loescher, Id. at 446-47.
The elements of a cause of action founded on strict liability, as adduced from articles 2317, 2319 and the interpretative jurisprudence, are: (1) the creation of an unreasonable risk of harm; (2) damage resulting from the risk of harm; and (3) a curatorship between the person which caused the damage and the party from whom the plaintiff is seeking recovery. Subsequent to our review of the record, we do not believe that the State in permitting Edwards to attend a street dance sponsored for the benefit of the Pinecrest residents created an unreasonable risk of harm. The facts and circumstances of this case do not warrant the application of strict liability. Our decision rests on the same moral, economic and social considerations discussed previously in this opinion. See, Entrevia, supra, (analysis of duty/risk in strict liability and negligence cases is essentially the same); See also, Jacoby v. Louisiana, 434 So.2d 570 (La.App. 1st Cir.1983).
For the above and foregoing reasons, the judgment of the District Court is affirmed.
All costs of this appeal are assessed against the appellants, Dora H. Brady and Stephen Brady.
AFFIRMED.