557 So.2d 249 (1989)
Norman Joseph GUIDRY and Melissa Guidry, Plaintiffs-Appellants,
v.
SAM GRIMMETT, INC.; (Weldon) Billy Morgan; and Safeco Insurance Company, Defendants-Appellees.
No. 88-700.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1989.
Writs Denied February 16, 1990.
*250 Michael B. Miller, Miller & Miller, Crowley, for plaintiffs-appellants.
James T. Genovese, Boagni & Genovese, Opelousas, and Arthur H. Andrews, Funderburk & Andrews, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, FORET, LABORDE, KNOLL and KING, JJ.
DOMENGEAUX, Judge.
This lawsuit arose from an accident which occurred on a drilling site while operations to dismantle the drilling rig were taking place. Plaintiffs are Norman Guidry and his wife Melissa Guidry. Defendants are Sam Grimmett, Inc.; its employee Weldon Morgan; and its insurer, Safeco Insurance Company of America. Guidry's employer, Pernie Bailey Drilling Company, intervened in the lawsuit to recover worker's compensation benefits paid as a result of Guidry's accident.
After a jury trial, judgment was rendered in plaintiffs' favor. The jury apportioned fault as follows: 40% to defendants, 40% to plaintiff, Norman Guidry, and 20% to Pernie Bailey. Damages of $234,000.00 were assessed, which sum was reduced by the percentage of Guidry's fault. Guidry's motion for judgment notwithstanding the verdict was denied and this appeal followed. *251 Defendants answered the appeal. We affirm.

FACTS
On February 9, 1985, Norman Guidry was working for Pernie Bailey as a roughneck on an oil rig owned by Pernie Bailey. To assist in the disassembly of the oil rig, Pernie Bailey hired a crane and operator from Sam Grimmett. Weldon Morgan was the Grimmett employee operating the crane, which was being used to dismantle the substructure of the rig at the time of the accident.
Morgan positioned the crane six to eight feet from the side of the rig structure. When the crane rotated to drop its load the counterweight on the back of the crane would come, at its closest point, to within six or eight inches of the side of the rig structure itself.
Guidry was working on the ground near the crane when he was told by the driller to go onto the substructure and assist in the dismantling operations. Guidry walked toward the rig within the swing radius of the crane; he stopped at the rig and looked inside the substructure to see where his assistance was needed most. The crane rotated, and Guidry was caught and pinned between the counterweight on the back of the crane and the side of the rig structure.

ISSUES
On appeal, all parties contest the jury's apportionment of fault. Plaintiffs assert that the jury erred in finding Guidry 40% at fault and further erred in the assessment of damages. Plaintiffs also contend that the trial judge erred in failing to give two requested jury charges. Finally, plaintiffs assert that the defendants' answer to the appeal was untimely.
Defendants raise three arguments. First, they contest the allocation of 40% fault to Sam Grimmett and Morgan. Second, they argue that the award of damages was too high. Third, defendants urge this Court to reduce plaintiff's damages, not just by the percentage of his own fault, but also by the percentage of fault assessed against Pernie Bailey.

APPORTIONMENT OF FAULT
The record supports the finding of negligence on the part of Sam Grimmett and its employee, Morgan. Morgan, an experienced crane operator, testified that he had only a six inch clearance between the rig and the crane's counterweight during a swing. He knew that a person could easily be caught in such a small space. Morgan offered no justification for positioning his crane so close to the rig, and in fact, he stated that he could have moved the crane several feet back with no problem.
The record establishes that Morgan was aware of the number of people walking around the drilling site. He knew there were no barricades to keep workers away from the danger zone surrounding the crane. Although the crane operator breached no industry or employer standards, the jury regarded his actions as negligent. This finding was not manifestly erroneous given the facts in the record and the testimony of the expert, Fred Liebkemann.
Liebkemann opined that a dangerous condition was created when rotating the superstructure of the crane, in order to boom around with a load, caused the back of the counterweight on the crane to pass within six inches of the rig. This danger could have been avoided by moving the crane approximately three feet back or by the use of barricades. Either solution is considered customary in the crane industry. Under these circumstances, we do not believe the jury's assessment of 40% negligence on the part of Sam Grimmett and its employee Morgan was manifestly erroneous.
Similarly, we affirm the jury's assessment of 40% comparative negligence on *252 the part of the plaintiff Guidry. Guidry was twenty-one years old at the time of the accident, and had worked on oil rigs for over a year. He had assisted in dismantling operations at least a dozen times. He was familiar with the use of cranes in such operations.
Guidry testified that he stood close to the rig in order to determine where in the substructure his assistance was needed most. Guidry had seen the crane rotate and was aware of its position and danger zone. He could have approached the crane at a different location, for a similar view of the interior, or gone immediately into the substructure via the stairways located far from the crane. The record is void of any evidence showing that Guidry attempted to signal the crane operator that he was in the area, nor does the record show that Guidry was required to be in that area at all. Given these facts, we do not believe the jury's assessment of 40% comparative negligence on the part of Norman Guidry was manifestly erroneous.

JURY INSTRUCTIONS
The Guidrys contend that the trial court erred in failing to give two requested charges to the jury. The first is essentially that a person with no actual or implied knowledge of a danger has a right to rely on those who have a duty to protect his safety; the second states that under certain circumstances, the defendant must be held to a higher standard of care than the plaintiff. In a jury trial, the judge is not required to give the precise instructions submitted by either party, but he must give instructions which properly reflect the law applicable in light of the pleadings and facts of each particular case. Arnold v. TG & Y Stores Company, 466 So.2d 529 (La.App. 3rd Cir.1985).
The trial judge believed the first charge was an incomplete statement of the law. We agree. The submitted charge does not define, explain, or limit those circumstances in which a plaintiff may lack such knowledge. The second charge was refused by the trial judge because its substance was already included in the court's general charges. The proffered instruction is simply a detailed explanation of the application of the reasonable man standard. The court's instructions included the general standard, "Negligence means simply the failure to do that which a person of ordinary prudence and intelligence would do under the same or similar circumstances." This naturally implies that each party will be judged within the context of his own circumstances, not the peculiar circumstances of another party.
We find that the trial judge's refusal to give the precise instructions offered by the plaintiffs was not manifestly erroneous.

DAMAGES
Guidry was twenty-one years old at the time of the accident and was a high school graduate. He joined Pernie Bailey as a roughneck in the oil field in 1983. Apparently due to economic circumstances, Guidry's starting salary of $9.65 per hour was cut to $8.00 per hour in 1984; he was still earning $8.00 per hour on the date of the accident.
Guidry was given emergency treatment at Our Lady of the Lake Hospital in Baton Rouge immediately following the accident. He sustained a chest laceration which was five inches long, three inches deep, and extended from the fourth rib past the chest wall muscles. Dr. James Smith, a general surgeon, operated to repair the chest injuries. He found that the pectoralis major, the chest muscle which allows arm rotation, had been completely severed. Guidry also suffered from a broken shoulder blade and joint and two broken ribs. Dr. Joseph Laughlin, an orthopaedic surgeon, was called in to repair the shoulder injury. Guidry remained in the hospital for five days.
Dr. Smith's testimony reveals that Guidry sustained a crushing type injury, a trauma which produces broken bones as well as torn muscles and skin. The blood supply to the muscles and surrounding nerves was cut off, resulting in atrophy of the muscles. Dr. Smith treated Guidry for six weeks, at which time the orthopaedic surgeon took over for purposes of rehabilitation.
*253 Dr. Laughlin treated Guidry until September 1986 for complaints of pain and weakness in the left shoulder. With physical therapy, Guidry was able to regain full range of motion within two months, but still had problems with strength and endurance. According to Dr. Laughlin, Guidry has a 20% physical impairment in the shoulder and, as a result, cannot perform heavy labor. Guidry should be able to perform light or medium labor with retraining.
Mr. Glenn Hebert, a vocational rehabilitation specialist, testified as to Guidry's employment prospects in light of his physical disability. In his opinion, with retraining, Guidry should be able to obtain a job earning more than minimum wage.
Donald Cromwell and Kenneth Boudreaux, both economists, testified on the subject of Guidry's lost wages. They both estimated Guidry's work life expectancy at 37 years. They assumed Guidry could reenter the work force, but at a lower salary than he was earning at the time of the accident. Beyond that, the variables used by each economist in calculating lost wages, past and future, differed greatly in terms of inflation, the economic forecast for the oil industry, fringe benefits, etc. The figures presented by both experts ranged from under $100,000.00 for the defendants to over $500,000.00 for the plaintiffs.
Damages for loss of future earnings are speculative. Factors which should be considered in assessing such an award include age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and inflation. Lanclos v. Rockwell International Corporation, 470 So.2d 924 (La. App. 3rd Cir.1985); writ denied, 477 So.2d 87 (La.1985).
The jury considered the aforementioned factors, as well as Guidry's medical expenses, and pain and suffering. The jury awarded a lump sum of $234,000.00. Before a Court of Appeal can disturb an award made by a trial court the record must clearly reveal that the trier of fact abused its discretion in making its award. After thoroughly reviewing the evidence presented herein, we do not believe that the jury's award of $234,000.00 was an abuse of discretion, considering Guidry's good recovery and his ability to reenter the job market. The award is affirmed.

COMPARATIVE FAULT REDUCTION
Defendants urge one final error on the part of the trial court. The court reduced Guidry's damage award by 40%, leaving 60% for defendants to pay. The negligence of Guidry's employer, Pernie Bailey, assessed at 20%, was not considered.
Defendants cite Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1330, 1331 (La.1986), for the proposition that an employer's negligence is to be disregarded in such a way that plaintiff's recovery is reduced by the percentage of the negligence assessed against the employer. Defendants' reliance on Franklin is misguided. Franklin specifically held that a plaintiff is entitled to full recovery of his damages regardless of any fault on the part of his employer:
We are of the opinion that the trial judge erred in considering Cliff's negligence. Because it paid worker's compensation benefits to Franklin, Cliff's is immune from all tort liability. We believe that allowing the apportionment of fault to include the negligence of an employer (by way of reduction of the plaintiff's recovery) erodes the system. Therefore, the judge should have held the two defendants, before the court liable for the full amount of plaintiff's damages. Cliff's negligence, if in fact there was any, is immaterial under the circumstances.
478 So.2d at 557.
The trial court's 40% reduction of Guidry's recovery properly included Guidry's fault and properly excluded the fault of Pernie Bailey. The award of damages is therefore affirmed.

*254 TIMELINESS OF APPEAL
Guidry complains that the defendants' answer to his appeal was not timely filed, and therefore, no relief can be granted to defendants on appeal. While we do note that this argument is moot, we must point out that La.C.C.P. art. 2133 states that an answer, when one is required, shall be filed "not later than fifteen days after the return day or the lodging of the record whichever is later." The record was lodged on June 29, 1988, and defendants filed an answer on July 7, 1988; therefore, the defendants' answer to plaintiff's appeal was timely filed.
For the above and foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are to be assessed equally between plaintiffs and defendants.
AFFIRMED.
KING, J., dissents for the written reasons assigned.
FORET, J., dissents.
KING, Judge, dissenting.
I dissent from the majority opinion affirming the finding of negligence on the part of Sam Grimmett, Inc. and its employee, Weldon Morgan (hereinafter defendants). Plaintiff failed to prove that defendants owed a duty to him or, even if such a duty was owed, that it was breached.
The majority finds that simply because the danger could have been avoided by moving the crane approximately three feet away from the rig or by using barricades that the defendants are liable. I disagree.
To determine whether or not the defendants are liable, a duty-risk analysis must be performed which consists of four inquiries: (1) Was the conduct complained of a cause-in-fact of the harm; (2) was there a duty imposed on defendant to protect against the risk involved; (3) was there a breach of that duty; and (4) did the conduct cause damage. Forest v. State, Thru Louisiana Dept. of Transp., 493 So.2d 563 (La.1986), rehearing den.; Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Brady v. State, Through Louisiana Health and Human Res. Admin., 525 So.2d 102 (La.App. 3 Cir.1988), writ den., 525 So.2d 1046 (La.1988).
The plaintiff asserts that the defendant, Morgan, caused his injury by placing the crane too close to the rig or by not using barricades around the crane before operating it. A defendant's action or conduct is a cause-in-fact of a harm if "but for" his conduct the accident or harm would not have occurred, or if his conduct is a substantial factor in bringing about the harm. Dixie Drive-It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Stephens v. Pacific Employers Ins. Co., 525 So.2d 288 (La.App. 1 Cir.1988), writ den., 532 So.2d 116 (La.1988); Edwards v. City of Leesville, 465 So.2d 263 (La.App. 3 Cir.1985), writ den., 467 So.2d 539 (La.1985). It is true that "but for" the crane being located so close to the rig or "but for" barricades not having been placed around the crane plaintiff may not have been caught and crushed, and that such conduct was a cause-in-fact of the harm to plaintiff.
However, under a duty-risk analysis, the next question to be answered is whether the defendants owed a duty to the plaintiff which protected the plaintiff from the risk involved. Actionable negligence only results from the creation of an unreasonable risk of harm to others. Guilbeau v. Liberty Mut. Ins. Co., 338 So.2d 600 (La.1976); on remand, 345 So.2d 79 (La.App. 1 Cir. 1977), writ den., 346 So.2d 716 (La.1977); Pratt v. Lifemark Corp., 531 So.2d 488 (La.App. 4 Cir.1988), writ den., 536 So.2d 1214 (La.1989). The duty, to be actionable, must involve acts or omissions which engender an unreasonable risk of harm to others. Pratt v. Lifemark Corp., supra; Eldridge v. Downtowner Hotel, 492 So.2d 64 (La.App. 4 Cir.1986). The plaintiff contends that defendants knew that a man could get caught and crushed between the back of the crane counterweight and the side of the rig structure. The testimony of the defendant, Morgan, shows that he knew this was possible, but this does not necessarily lead to a conclusion that the risk created by the action is unreasonable. In determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused, but also the *255 likelihood that harm may result is relevant. Guilbeau v. Liberty Mutual Ins. Co., supra; Pratt v. Lifemark Corp., supra. Here, the seriousness of the harm was great, but the likelihood of a reasonable person walking and standing so near a crane that the back of the crane counterweight could hit and crush him, between the counterweight and the side of the rig structure when the crane rotated, was very remote. Defendant, Morgan's, action of parking the crane near the rig did not create an unreasonable risk of harm. Some risks are reasonable and apparent, and the individual encountering such a risk is under an obligation to deal with and/or avoid such risks. Pratt v. Lifemark Corp., supra. For these reasons, I believe that there was no unreasonable risk of harm to plaintiff.
Further, it is not clear what duty, if any, the defendant, Morgan, breached. The plaintiff pointed to no statute or regulation which prohibited locating the crane near a rig structure. Plaintiff presented no evidence of an industry standard or custom, nor did he present any witnesses who worked on oil rigs or cranes who testified that cranes usually park farther away from the side of a rig when dismantling it. Plaintiff presented no evidence of an industry standard or custom of using barricades around a crane while it is being used to dismantle a rig. Plaintiff presented no evidence whatsoever that crane operators are under any duty, statutorily or customarily, to remain a certain distance from the side of a rig, or to use barricades in situations like the one presented here. The comparatively slight likelihood of injury resulting from the parking of the crane too close to the rig or from not placing barricades around the crane does not justify finding the defendants negligent, since there was no proof that such action violated any law or was not in accordance with the usual practice of the industry. Guilbeau v. Liberty Mutual Ins. Co., supra; Pratt v. Lifemark Corp., supra.
The plaintiff also failed to prove that the defendant, Morgan, had a duty to look to see if there was any danger. Morgan had a duty to watch his flagman because his view was limited. The flagman signaled for him when to rotate the crane, and he did so on the flagman's signal. Had he not been watching his flagman, and the flagman had seen a danger and signaled him to stop, he would not have been able to do so. It was the responsibility of the flagman and the other lookouts, if there were any, to warn plaintiff. If there was an inadequate number of flagmen or lookouts or if they failed to see plaintiff, it was a breach of the responsibility of Pernie Bailey, who was under a duty to supply the lookouts, not defendant, Morgan, who was only there to operate the crane. Even if we assume that defendant, Morgan, had a duty to look, plaintiff offered no evidence that he could have seen or should have seen the plaintiff. Plaintiff failed to even ask defendant, Morgan, if he looked or if he saw the plaintiff before he rotated the crane. Put simply, plaintiff failed to carry his burden of proving any breach of any duty, if there was indeed a duty.
Finally, plaintiff alleges that defendants failed to warn the roughnecks of the danger involved with cranes. The evidence shows that Pernie Bailey employees knew and had been told not to get within the swing radius of cranes. Pernie Bailey did not hold formal meetings for such purposes, nor did the defendants, but the evidence shows that all roughnecks were exposed to informal meetings and talks about safety and about staying away from cranes when they were in operation. If there was a duty to hold formal meetings, that too rested with Pernie Bailey, the plaintiff's employer. Furthermore, even if the defendant, Morgan, had a duty to warn, and even if he breached that duty, it was not a cause-in-fact of the injury. The plaintiff could see and knew of the danger.
I believe that as a matter of law, the defendants owed no duty to protect the plaintiff from the risk he encountered in these circumstances and, even if defendants had such a duty, plaintiff failed to prove a breach of such duty by defendants.
For these reasons I respectfully dissent.