525 So.2d 60 (1988)
Barry G. AMMONS, Jr., et ux., Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE CO., Defendant-Appellee.
No. 86-1274.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Writ Denied March 25, 1988.
*61 James D. Davis, Alexandria, for plaintiffappellant.
Provosty, Sadler & Delaunay, Albin Provosty, Alexandria, for defendant-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOUCET, Judge.
Plaintiff, Barry G. Ammons, Jr., appeals from a judgment awarding him only special damages for medical expenses incurred as the result of injuries sustained in an automobile truck collision.[1] Liability for the accident is not an issue on appeal, only quantum.
On October 15, 1984, as plaintiff, his wife, and infant child were exiting a parking lot, defendant, Joseph McHenry, backed his tractor-trailer truck into the Ammon vehicle. Moments before the impact, plaintiff twisted his torso around, reaching towards the rear seat in an effort to protect his wife and child who were seated there. Shortly after the accident plaintiff began experiencing pain in his back and subsequently in his legs.
Plaintiff was examined by Dr. John T. Weiss, an orthopedic surgeon, who diagnosed plaintiff to be suffering from between a Grade 1 and Grade 2 spondylolisthesis, or slippage of one vertebra on top of another. Grade 1 is the lowest classification of four degrees of spondylolisthesis. He also found that plaintiff suffered from spondylosis, or lack of continuity of the vertebra, which in turn facilitated the spondyloslisthesis. Dr. Weiss felt that both the spondylosis, a common congenital defect, and the spondylolisthesis were present before the accident. The spondylolisthesis, he felt, was asymptomatic before the accident and the accident aggravated the condition, causing it to become symptomatic. This opinion was based upon plaintiff's history that he had not experienced any back pain or similar problems before the accident. Dr. Weiss twice scheduled plaintiff for back surgery and each time plaintiff backed out.
Plaintiff decided to obtain a second opinion, and, in July 1985, was examined by Dr. Kenneth Vogel, a neurosurgeon. Plaintiff complained to him of low back pain and numbness in his legs below the knees. Dr. Vogel diagnosed plaintiff to have spondylosis with a Grade 1 spondylolisthesis. He also found moderate muscle spasm on both sides of plaintiff's lower back. He scheduled surgery for plaintiff and on August 21, 1985, performed a microscopic laminectomy. Dr. Raymond Kitziger, an orthopedic surgeon, performed a spinal fusion at the L-5, S-l level of plaintiff's spine during that same operation. The microscopic laminectomy was necessary to relieve pressure on a nerve caused by the spondylolisthesis which resulted in the nerve being "scissored" between two vertebra.
Dr. Vogel stated that the surgery revealed a Grade-2 spondylolisthesis with compression of the L-5 nerve root. He stated that the spondylosis existed from birth but that spondylolisthesis (slippage) *62 usually occurs at the time that pain symptoms appear. Considering plaintiffs history he opined that the accident was the most likely cause of the appearance of pain symptoms and muscle spasm. Dr. Vogel gave plaintiff a 25% permanent disability rating after the operation. He felt that the plaintiff suffered no disability before the accident and onset of pain symptoms because, he stated, if plaintiff had no pain he had no disability.
Dr. Raymond Kitziger, who performed the spinal fusion on plaintiff, examined him before the operation and found a forty to fifty percent restriction of flexion and extension of plaintiffs lumbar spine. He also noted the presence of muscle spasm in the large paravertebral muscles running along each side of plaintiffs spine which, he explained, was an objective symptom. He stated, "the back was trying to do its own fusion by the muscles going into spasm to hold him still." Dr. Kitziger felt that the spondylolisthesis had occurred or developed before the automobile accident but was asymptomatic. He said he would have given plaintiff a 10% disability rating even before the accident when there was no pain, and, as Dr. Vogel, a 25% permanent disability rating since the accident and operation. Dr. Kitziger agreed that the type of automobile accident plaintiff was involved in could have precipitated the onset of pain symptoms in the plaintiff. This supposition, he stated, was based upon plaintiffs history that he suffered no back pain before the accident.
Plaintiff testified that prior to the accident he had never experienced any back pain or problems with his back. During his junior and senior high school years he had been active in sports including football, basketball, baseball, and track. After high school he continued running, often in organized races. He also enjoyed lifting weights and playing recreational football. Since the accident and his operation he no longer engages in these activities. In February 1985, some four months after the accident but before his back surgery, plaintiff began working as a masonry tender or brick layer's helper. This work involved carrying bricks and concrete blocks, mixing mortar, setting up and dismantling scaffolding, and generally assissting the masons. He continued this work up until his surgery in August 1985 and testified that he returned to work some two and one-half months after the surgery. The plaintiff testified that the work hurt his back but that he needed to support his wife and child and had no alternative but to work. He has a high school general equivalency diploma, no college, and no specific job training or skills. To deal with the pain he would take non-prescription Tylenol as well as muscle relaxers prescribed for him.
Plaintiff's wife, Dina Ammons, testified that she had never heard the plaintiff complain of pain in his back or legs before the accident. After the accident he often complained of pain in his back and took a lot of Tylenol. She would massage his back in the evening and he would soak in a bathtub of hot water. She stated that since the operation plaintiff is doing better but still complains of pain and takes muscle relaxers. She also still massages his back.
A fellow employee of plaintiff's, a bricklayer, testified that he had heard plaintiff complain that his back was hurting him and that he had seen him take pills on occasion. Plaintiff's employer, Richard Spurgeon, also testified that plaintiff had mentioned to him that his back hurt. The employer admitted however, that plaintiff performed all of the job-related tasks required of him. The employer characterized a masonry tender's job as "hard work", noting that the heavy bricks or blocks weigh from 18 to 25 pounds each.
The defense brought out that subsequent to the automobile accident but prior to the operation the plaintiff fell some fifteen to eighteen feet to the ground when a scaffold he was working on collapsed. Plaintiff claimed that the fall did not aggravate his back condition and this is supported by an emergency room report which concludes that the plaintiff only bruised his leg in the fall. Plaintiff was taken to the emergency room as a precaution and returned to work later that same day to perform his regular work duties. A fellow employee confirmed plaintiffs return to work the day of that *63 accident while another testified that plaintiff was grinning when he saw him lying on the ground amidst the collapsed scaffolding equipment, indicating that he was not hurt.
The defense played a video tape for the jury consisting of footage taken on August 5th and 6th, 1985, at a jobsite where plaintiff was working. The tape showed plaintiff, among other things, carrying two concrete blocks, one in each hand. Dr. Weiss, who first examined plaintiff following the accident, stated that on viewing the video tape, he did not notice plaintiffs actions being limited by his alleged back problems. He felt that such work activity was not compatible with plaintiffs complaints of pain and that he would not have performed a fusion knowing that plaintiff was able to perform such work.
Dr. Vogel, who performed the microscopic laminectomy, testified that he would be a bit apprehensive to know that plaintiff returned to work two and one-half months after the operation because a spinal fusion usually takes approximately one year to obtain maximum stability. However, he also stated that in his experience many people will return to work when the pain goes away and they need the money, "regardless of the fact it may be a little dangerous." Dr. Kitziger, who performed the fusion, was surprised that plaintiff returned to work as a masonry tender only two and one-half months after the operation.
It was stipulated by defendant that plaintiff incurred specified medical expenses following the accident. Based upon all of the evidence, the jury found that the defendants, Joseph McHenry and his insurer, St. Paul Fire & Marine Insurance Company, were liable to plaintiff for $17,600.00 in special damages for medical expenses. The jury awarded no special damages for past loss of income nor any general damages.
On appeal plaintiff contends that it was error for the jury to award special damages but no general damages when plaintiff had personal injuries that presented objective symptoms. He also seeks an increase in special damages to compensate him for $3,042 in past lost wages.
We begin our review by recognizing the general rule that an appellate court may not disturb an award of general damages made by a trial court absent an abuse of the great discretion afforded the trier of fact in this area. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). However, we are also cognizant of the wellsettled rule that a jury cannot award special damages for personal injuries and refuse to award any amount in general damages where the injuries present objective symptoms. Labauve v. Central Mutual Ins. Co., 491 So.2d 146 (La.App. 3rd Cir. 1986); Brown v. Grigsby, 394 So.2d 847 (La.App. 3rd Cir. 1981); Moss v. Security National Insurance Company, 350 So.2d 247 (La.App. 3rd Cir.1977) writ denied, 352 So.2d 239 (La.1977).
Defendants argue that the special damages in this case were awarded by the jury out of sympathy and that the jury's award is a denial of damages based on plaintiffs complete lack of actual injury.
In making the award of special damages the jury obviously found that the automobile accident was the legal cause of plaintiff's previously asymptomatic spinal condition becoming symptomatic, thereby necessitating medical treatment. The record fully supports such a finding by the jury. There is no evidence that the plaintiff ever suffered from any back pain or related problems until the accident in question. Whether or not the accident precipitated the initial spondylolisthesis or merely aggravated a preexisting spondylolisthesis, the evidence furnishes sufficient evidence to establish a causal relationship between the accident and the need for medical treatment, including surgery.[2]
*64 Defendants question the presence of objective symptoms of pain. There was some difference of opinion among the three physicians who testified as to whether or not the spondylolisthesis had occurred prior to the accident or was precipitated by the accident. However, the evidence is uncontroverted that during the microscopic laminectomy performed by Dr. Vogel, material around a nerve was removed to relieve pressure on it caused by spondylolisthesis. The "scissoring" of the nerve was clearly an objective cause of the pain experienced by the plaintiff after the accident. In addition, at least two of the treating physicians found muscle spasm in the paravertebral muscles in plaintiff's back, the spasms being the result of his body's natural response to stabilize his spine and prevent the slippage of the vertebra. This type of muscle spasm is also an objective symptom.
Admittedly the plaintiff worked after the accident performing heavy manual labor. However, defendant offered no evidence to dispute plaintiffs claim that he was forced to work to support his family. The evidence also supports plaintiff's claim that he was in pain while he worked. The fact that he performed such work certainly indicates that the pain was not disabling but in no way leads us to believe that his claims were fraudulent. More importantly, the jury did not believe so or it would not have awarded special damages to compensate plaintiff for all of his medical expenses.
Perhaps, however, the jury erroneously believed that since the plaintiff could work he was not entitled to any general damages. The failure to award general damages in this case where the jury awarded special damages and the plaintiff exhibited objective symptoms was a clear abuse of the jury's discretion. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., supra; Labauve v. Central Mutual Ins. Co., supra; Brown v. Grigsby, supra; Moss v. Security National Insurance Company, supra.
Having found that the lower court abused its discretion our task is to determine an award in general damages equal to
the lowest award which would have reasonably been within the discretion of the trial court. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., supra; Moss v. Security National Insurance Co., supra. Plaintiff and defendant each cite several awards made at the trial and appellate levels as illustrative of an appropriate award of general damages to be made in this case. The awards range from $2,000 to $125,000. While it is certainly proper to consider prior awards in making our determination, no two cases are ever completely alike and each personal injury must be evaluated according to its own peculiar circumstances. Alexander v. Leger, 423 So.2d 731 (La.App. 3rd Cir.1982); Wilkinson v. Hartford Accident and Indemnity Co., 421 So.2d 440 (La.App. 3rd Cir.1982).
Since the operation it is apparent that plaintiff's condition has improved. However, he still suffers from some pain. Even though he was forced for financial reasons to work after the accident, the fact that he could perform heavy manual labor both before and after the operation indicates that the pain was not so severe as to be disabling. As a direct result of the accident plaintiff now has a 25% permanent functional disability. Arguably though, he may have had a 10% functional disability before the accident. The plaintiff is in his early twenties and led an active life insofar as engaging in physical leisure activities. At least as of the time of trial, he no longer pursued these activities because of pain and discomfort.
Considering the unique facts and circumstances of this case, as well as prior awards made in similar cases, we feel that the lowest award of general damages which a trial court could have made is $25,000.
Plaintiff also claims that it was error on the part of the trial court not to award him any sum for past lost wages. It was inconsistent for the jury to award plaintiff damages fully compensating him for all of his medical expenses attributable to the accident but not award him any sum *65 for wages lost during the period of his operation and recuperation. Past lost earnings are susceptible of mathematical calculation from proof offered at trial and an award for this element of damages is not subject to the much discretion rule. Cookmeyer v. Langston, 487 So.2d 525 (La.App. 4th Cir.1986); Young v. South Central Bell Telephone Company, 412 So.2d 147 (La.App. 4th Cir.1982).
The plaintiff testified that he returned to work some two and one-half months after leaving the hospital. The operation was on August 21, 1985, he was discharged from the hospital on September 3, 1985, and returned to work in the first week of December. The date of his return to work was confirmed by his employer, Richard Spurgeon, who referred to his records while on the witness stand. Spurgeon further testified that during the period plaintiff was recuperating his rate of pay would have been $6.00 per hour and that his workers averaged thirty hours of work per week although sometimes less in the winter months. We note that the weather conditions in September, October and November are generally favorable for those working outdoors. The plaintiff also testified that because of weather conditions he would average over a year approximately thirty hours of work per week.
Whatever standard of review we employ, we find that the jury was clearly wrong in failing to award plaintiff lost wages from August 21, 1985 through the month of November 1985. Based upon thirty hours a week at $6.00 per hour, we calculate this amount to $2,520.00.
For the reasons assigned we amend the judgment of the trial court to award plaintiff $17,600 in special damages for medical expenses; $2,520 in special damages for past lost wages; and $25,000 in general damages. The judgment of the trial court is amended and recast to read as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is rendered in favor of plaintiff, BARRY G. AMMONS, JR., and against defendants, ST. PAUL FIRE & MARINE INSURANCE COMPANY AND JOSEPH E. McHENRY in the amount of FORTY-FIVE THOUSAND, ONE HUNDRED TWENTY AND NO/100 ($45,120.00) DOLLARS.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment by and hereby is rendered in favor of defendants, ST. PAUL FIRE & MARINE INSURANCE COMPANY AND JOSEPH E. McHENRY and against plaintiff, DINA AMMONS dismissing her suit with prejudice.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendants, ST. PAUL FIRE & MARINE INSURANCE COMPANY and JOSEPH E. McHENRY be assessed costs at both the trial and appellate levels.
AMENDED AND AS AMENDED, RECAST.
NOTES
[1] Plaintiffs wife was also a party-plaintiff. She was not injured and was not awarded any damages. She has not appealed and all references to plaintiff are to Barry G. Ammons, Jr.
[2] A tort-feasor takes his victim as he finds him. He is responsible in damages for the natural and probable consequences of his tortious conduct even though such damages are greater because of a prior condition of the victim which is aggravated by the tort. Thames v. Zerangue, 411 So.2d 17 (La.1982); Perniciaro v. Brinch, 384 So.2d 392 (La.1980); White v. Cumis Insurance Society, 415 So.2d 574 (La.App. 3rd Cir. 1982).