567 So.2d 786 (1990)
Tammy ARCENEAUX, et al., Plaintiffs-Appellants,
v.
Chris KOCH, et al., Defendants-Appellees.
No. 89-465.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
DeJean, DeJean & DeJean, Broderick C. DeJean, Opelousas, for plaintiffs-appellants.
Dauzat, Falgoust, Caviness & Bienvenu, Jerry Falgoust, Opelousas, for defendants-appellees.
Before DOUCET, YELVERTON and KING, JJ.
YELVERTON, Judge.
Tammy Arceneaux and her two children, Tamara, ten months old, and Kendra, four years old, were in a slight accident when their car was in a collision on the Burger King parking lot in Opelousas with a van driven by Chris Koch. Tammy saw a chiropractor for her claimed neck injuries and *787 took the children to a psychiatrist for their injuries. The chiropractor and the psychiatrist each presented a bill slightly in excess of one thousand dollars for their treatment which went on over a period of several months. Tammy sued Koch and his insurer for all damages, and Danny, the husband and father, joined the suit as a plaintiff for loss of consortium.
The case was tried by a jury, and was completed in one day. Tammy and Danny testified, as did the chiropractor, the psychiatrist, and the defendant, Koch.
The jury found Tammy and Koch each 50% at fault. Answering specific interrogatories on the verdict form, the jury allowed zero recovery for the services of Dr. Gary Byrd, the psychiatrist, zero recovery for other medical bills, zero general damages for the claims of Tammy, Tamara and Kendra, and zero damages for loss of consortium asserted by Danny. A motion for judgment notwithstanding the verdict, or in the alternative a new trial, was denied by the trial judge. Plaintiffs appeal. We affirm.
The first issue raised on appeal is the question of fault. Koch was driving a van, and was in the process of backing out of a parking place at the Burger King restaurant when Tammy drove onto the parking lot from off a public street. The Arceneauxs complain on this appeal that all of the fault should be borne by Koch, because of the high duty of care owed by a backing driver.
Our review of this issue is regulated by the standard of manifest error. As is often the case, there were as many versions of facts as there were witnesses. Koch testified that when he began to back up, the way was clear behind him. There was evidence that Tammy came off a public street and into the driveway rather fast, and she herself at one point said that she saw the van before she left the street. The van backed into the left side of the car. The parties could not agree where exactly on the lot the accident happened. The city policeman who investigated the accident made no accident report, and had nothing to refresh his memory of what had happened two-and-one-half years before he testified. On the basis of this testimony we can see no better reason for coming up with a different assessment of fault than that found by the jury, and certainly no reason on which to base a finding of manifest error.
On the subject of damages, it is abundantly clear from this record why the jury rejected the plaintiffs' claims, even for the medical bills. The jury's decision was undoubtedly impelled by a combination of the questionable professional qualifications of the two experts, and the credibility of Tammy, the plaintiffs' main witness.
The chiropractor was Dr. Rick Ortego. In Dabney v. Mayfield, 535 So.2d 45 (La.App. 3rd Cir.1988), we affirmed the trial court's refusal to consider the chiropractic testimony of Dr. Ortego, because he had not met the requirements of La.R.S. 37:2811, having to do with licensing for the year 1986, and therefore we held that he was not entitled to practice chiropractic in the state nor could he testify as an expert witness in that case. Dr. Ortego's treatment of Tammy Arceneaux in the present case occurred during the year 1986, the same year we found that he was ineligible to practice chiropractic and concerning which practice he could not testify. The trial judge in the present case was in error in allowing this chiropractic testimony before the jury. However, the error did not affect the result, as the jury chose not to give Dr. Ortego's testimony any weight.
The jury also chose not to give any weight to the testimony of Dr. Gary Byrd, the psychiatrist. When Dr. Byrd treated Tammy and the two children, he was a licensed medical doctor in the states of Texas and Louisiana. When he testified in this case, his license was under suspension in Louisiana following charges of sexual battery to a minor and allegations that he suffered from psychological difficulties causing unfitness to practice medicine. The trial judge allowed Dr. Byrd to testify in this case based on reciprocity, reasoning that although his license was suspended in Louisiana, his license to practice medicine *788 in Texas was not. We need not address the question of whether or not this was a correct ruling, as the jury found that the Arceneauxs suffered no damages requiring the services of Dr. Byrd. On the evidence this finding was not error.
Tammy went to see the chiropractor the next day following the accident. A few days later he referred her to the psychiatrist because of her "concerns due to regressive behavior of daughters". For the next nine months Dr. Byrd said he treated Tammy and the two girls. Tammy denied being herself a patient of the psychiatrist. Although the ten month old child was one of the patients, she had no symptoms. The two symptoms noted in the four year old were bed wetting and nervousness. The doctor gave no explanation as to why the treatment went on for nine months. The four year old's mother testified that the bed wetting ceased after three months. The child's father, Danny, testified that the child's bed wetting lasted for three or four days following the accident, and that thereafter she displayed no symptoms that might be related to the accident. Tammy explained that conflict by saying that Danny did not know what was going on around the house. But Danny said he regularly talked to his wife and children and if anything out of the ordinary happened, he would know about it. The jury believed that the testimony of Tammy was not credible. This was based undoubtedly on the numerous contradictions between what she testified regarding her injuries, and the condition of her children, and what she told the two persons consulted for these claimed injuries.
In addition to the usual charge to the jury regarding credibility of witnesses in general, the trial judge gave the following particular instruction regarding experts:
You may adopt, or reject [the] conclusions [of experts], according to your own best judgment, giving to them in each instance such weight as you think should be given under the circumstances.
This was a correct statement of the law. Tyler v. Richardson, 476 So.2d 899 (La. App. 2d Cir.1985), writ denied, 478 So.2d 907 (La.1985); Taylor v. Dixie Dandy, 493 So.2d 654 (La.App. 2d Cir.1986).
The responses to the interrogatories on the jury form indicate that the jury chose to give no weight at all to the testimony of the two experts. The jury also chose to give no weight to the testimony of the plaintiffs regarding their claimed injuries. Based on this record, we find no manifest error in these decisions. The judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.