572 So.2d 613 (1990)
Raymond ROSENTHAL, et al., Plaintiffs-Appellees-Appellants,
v.
MID-AMERICAN INDEMNITY CO., et al., Defendants-Appellants-Appellees.
No. 89-733.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Neblett, Beard & Arsenault, Jeffery Riggs, Alexandria, for plaintiffs-appellees-appellants.
Woodley, Williams, Fenet, Palmer & Norman, Alfred Boudreaux, Lake Charles, for defendants-appellants-appellees.
*614 Joe Kutch, Pineville, for defendants-appellees-appellants.
Stafford, Stewart & Potter, Mark A. Watson, Alexandria, for defendants-appellees.
Before GUIDRY, FORET and KING, JJ.
GUIDRY, Judge.
This suit arises as a result of an automobile accident which occurred on January 19, 1988. Plaintiffs, Raymond Rosenthal and Carol Wilson, filed this suit naming as defendants Robert Smith; Mid-American Indemnity Company (hereafter Mid-American), insurer of the vehicle owned by Ellen Thomas and being driven by Robert Smith; Champion Insurance Company (hereafter Champion), liability insurer of Robert Smith[1]; and, Viking Insurance Company. Prior to trial, Viking was dismissed on motion of plaintiffs.
At trial, the liability of Mid-American, as primary insurer, and Champion, as secondary insurer, was stipulated. The vehicle driven by Robert Smith, was insured by Mid-American with policy limits of $10,000.00 per person and $20,000.00 per accident. Champion afforded like coverage to Smith.
The trial court awarded damages as follows:

Raymond Rosenthal
General damages $ 6,500.00
Stipulated vehicular damage 2,563.00
Stipulated medical bills 1,234.52
Car Rental (January 25September
 16, 1988two-thirds
 of the
 claimed amount) ............. 5,402.00
Storage (January 19October
 31, 1988two-thirds
 of the
 claimed amount) ............. 1,430.00
Towing 65.00[2]
 ----------
 $17,194.52
Carol Wilson
General damages $ 9,000.00
Stipulated medical bills 1,570.25
Lost wages (5 weeks at $450.00
 per week) 2,250.00
 __________
 $12,820.25

Mid-American was cast in judgment for its policy limits of $20,000.00 and Champion was cast for the balance as secondary insurer. Mid-American and Champion were jointly cast for all costs. All parties appeal questioning the trial court's awards, plaintiffs urging their inadequacy and defendants urging their excessiveness.
The principles applicable to appellate review of quantum awards are well settled. As stated in Chatelain v. United States Fidelity and Guaranty Company, 495 So.2d 379 (La.App. 3rd Cir.1986), writ denied, 498 So.2d 756 (La.1986):
"... Before the appellate court can disturb a quantum award made by the trier of fact, the record must clearly reveal that the trier of fact abused its great discretion in making the award. The question to be answered on the appellate level is whether the trier of fact's award can be reasonably supported by the record, not whether a different award may have been more appropriate. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Browning v. Commercial Union Ins. Co., 476 So.2d 559 (La.App. 3rd Cir.1985); Sikes v. McLean Trucking Co., 383 So.2d 111 (La. App. 3rd Cir.1980).
In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must look at the individual circumstances of the case before it. Only after a close analysis of the facts reveals a clear abuse of discretion of the trier of fact may the award of damages be altered. Reck v. Stevens, 373 So.2d 498 (La.1979); Hefner v. B.J. McAdams, Inc., 487 SO.2d 505 (La.App. 3rd Cir.1986)."

GENERAL DAMAGE AWARD TO RAYMOND ROSENTHAL
The record reveals that Rosenthal injured his right shoulder, chest, left hand *615 and back. He suffered minor cuts to his head and left hand. He was first seen in the emergency room at Rapides General Hospital where he was treated for cuts, bruises, etc. X-rays taken revealed no fracture or other abnormality. In response to his shoulder complaints, the use of a sling was recommended. Plaintiff testified that he used the sling for approximately one month. After a few hours Rosenthal was released to go home. On January 25, 1988, some six days later, Rosenthal was first seen by Dr. Dave Rayburn, M.D., who, after examination, concluded that, as a result of the accident, Rosenthal suffered a muscle strain involving the pectoralis muscle, both at its origin and near the sternum and its insertion on the humerus. He was treated conservatively. Rosenthal was next seen by Dr. Rayburn on February 3, 1988. On this visit the doctor found that the pain in Rosenthal's shoulder had decreased but that he had developed pain in his lower back which was secondary to the shoulder injury. On this visit Dr. Rayburn referred Rosenthal to CENLA Physical Therapy where he received thirteen treatments between February and May of 1988.
The physical therapist, O'Day Lavergne, testified that he afforded Rosenthal the usual therapy indicated in such cases, moist heat, electric stimulation, exercise etc. Lavergne testified that Rosenthal was not released following his last treatment on May 9, 1988 but that he just simply quit coming.
Rosenthal was not seen again by Dr. Rayburn and, as far as the record reflects, was never again seen by a medical doctor or physical therapist for any complaints referable to any injury which he may have sustained in the accident.
At trial Rosenthal stated that he continues to suffer from back stiffness and recurring arm and shoulder pain.
As before mentioned, the trial court awarded Rosenthal $6,500.00 in general damages. Although we view the trial court's award as generous, we are unable to conclude that such award constitutes a clear abuse of the trial court's much discretion.

GENERAL DAMAGE AWARD TO CAROL WILSON
Carol Wilson, a passenger in the Rosenthal vehicle, was also injured in the accident. She received scalp lacerations and injured her hip and thigh. She was taken to the emergency room for initial treatment. X-rays taken revealed no fractures or other abnormalities. Ms. Wilson was released to return home the same day after receiving conservative treatment. She was next seen by Dr. Rayburn on January 25, 1988. Examination by Dr. Rayburn revealed large bruises on her thigh as well as down her right anterior tibial area and down on the dorsum of her foot. Dr. Rayburn referred Ms. Wilson to CENLA Physical Therapy. Dr. Rayburn next saw Ms. Wilson on February 12, 1988, which was her second and last visit. He described her condition on the occasion of that visit as follows:
"I saw her again on February the 12th, and at that time her ecchymotic areas were healing nicely. She had increased movement in her right thigh, as well as her leg. She did have some occasional numbness down in the toes, but this wassensory was intact down there. it was subjective numbness. Her lacerations on her head had healed nicely, and she had occasional headaches, and other than that was doing quite well."
Following this visit, Ms. Wilson was advised by Dr. Rayburn that she could return to work.
Like Rosenthal, Ms. Wilson made thirteen visits to a physical therapist before discontinuing treatment.
In September of 1988, Ms. Wilson sought treatment from Dr. Robert Levy, an Oral and Maxillofacial Surgeon, for left temporomandibular joint pain and headaches. Dr. Levy examined Ms. Wilson and also took x-rays. He found no abnormal pathology of her temporomandibular joints but did find that the "raphe" going down the center of her skull was tender to palpation. Dr. Levy opined that Ms. Wilson was a clencher. He testified as follows regarding *616 Ms. Wilson's problem and its relationship to the accident:
"It may be causing her to have some of her muscle spasm. My feeling initially, in talking to her, is that she may have what is called `post-concussion syndrome,' which is basically getting a good lick on the head, and having headaches afterwards, until the slight bruise on the brain has eased up and repaired itself. I've seen that before. The tenderness on top of her head does lead to the muscles being one of the sources of her headaches."
On cross-examination, Dr. Levy responded as follows to questioning concerning the medical probability that the problems noted by him were accident related:
"Well, let me say this: The patient is a clencher. Now, whether the accident has caused her to clench more and caused this to happen, I don't know; but, at this point in time, when I examined her, I'm convinced the patient is a clencher.
. . . . .
Q. Did you say that the automobile accident may have caused muscle spasm in her jaw?
A. Possibly.
Q. Could you say more prabably than not whether it did ...
A. I don't know. I really don't know."
The trial court, in support of its award of general damages to Ms. Wilson, stated, in written reasons, as follows:
"Plaintiff, Carol Wilson suffered injuries to her head, hip, back and ankle. She was treated at Rapides General Medical Center initially and was later seen by Dr. Rayburn. She received physical therapy treatments at Cenla Physical Therapy. She was unable to return to her job for five weeks. She was also seen by Dr. Levy, an Oral and Maxillofacial Surgeon because of problems with her jaw and headaches. At the time of the trial she was still having head and back pain. She testified that she can not play racket ball now as she did before the accident. The Court fixes her general damages at $9,000.00."
A close analysis of the medical and lay testimony convinces us that the trial judge clearly abused his much discretion in awarding Ms. Wilson $9,000.00 in general damages. The injuries which she suffered were minimal. According to her treating physician, by February 12, 1988, she was healing nicely and was able to resume her employment. She voluntarily ceased physical therapy treatments after thirteen visits. Although Ms. Wilson complained of headaches, there is no evidence in the record to support a finding that she has suffered or continues to suffer any severe pain of long duration. Further, Ms. Wilson failed to establish by a preponderance of the evidence that the headaches which she suffers as a result of her jaw problem are, within the realm of medical probability, accident related. Rather, it appears that her jaw problem and the headaches which result therefrom are more probably due to clenching. See Young v. Department of Hospitals, 365 So2d 848 (La.App. 3rd Cir.1978), writ denied, 368 So2d 137 (La.1979); Coco v. Richland General Contractors, Inc., 411 So2d 1260 (La.App. 3rd Cir.1982), writ denied, 413 So2d 909 (La.1982).
We find clear error in the trial court's general damage award to Ms. Wilson and its award of special damages for the services rendered her by Dr. Levy, i.e., $360.00. Our review of similar cases prompts our conclusion that the highest general damage award reasonably within the trial court's discretion is $6,000.00. Therefore, we will reduce the general damage award to Ms. Wilson to $6,000.00 and the award to her for medical expenses to the sum of $1,210.25.

CAR RENTAL AND STORAGE
The defendants next argue that the trial court abused its much discretion by awarding Rosenthal damages for "two-thirds" of the rental fees incurred from January 25, 1988 until September 16, 1988.
This area of the law is well settled. In Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir.1977), writ denied, 354 So2d 1050 (La.1978), we stated:

*617 "Generally, damages for loss of the use of a vehicle (or for the rental of another) are recoverable. However, that rule is subject to the following reservation. In those cases in which the wrecked vehicle is totally destroyed or its repair is not economically feasible, those damages are recoverable only for a reasonable time, that period in which the owner becomes aware of the situation and secures a replacement therefor. Hoffman v. All Star Ins. Corp., 288 So.2d 388 (La.App. 4 Cir.1974), writ refused, 290 So.2d 909 (La.); Barry v. United States Fidelity & Guaranty Co., 236 So.2d 229 (La.App. 3 Cir.1970)."
It was stipulated that Rosenthal's 1970 Lincoln Continental was totaled beyond repair. The record reveals that Rosenthal knew early on that his car was a total loss. Rosenthal's attorney, in a phone conversation of February 24, 1988, informed the insurance adjuster, Allen Rasberry, that Rosenthal's vehicle was totally destroyed. In that conversation, Rasberry told Rosenthal's attorney that the insurance company would not be responsible for rental bills because the automobile was a total loss.
The trial court awarded $5,402.03 for rental expenses (156 days at $34.63 per day) and $1,430.00 as storage expenses (190 days at $7.50 per day). We find that these awards are not supported by the record and constitute a clear abuse of the trial court's much discretion.
In Menard v. Prejean, 374 So.2d 1275 (La.App. 3rd Cir.1979), the court determined that 30 days was a reasonable period of time for a replacement to have been purchased. Since Rosenthal knew as early as February 24, 1988 that his automobile was a total loss, we consider that a period of thirty days from that date was a reasonable time during which Rosenthal could secure a replacement vehicle. We likewise conclude that Rosenthal should not be allowed storage fees for a longer period. Accordingly, we will amend the judgment of the trial court to award automobile rental expenses at $34.63 per day for 67 days (January 19 to March 25, 1988) or the sum of $2,320.21 and storage expenses at $7.50 per day for a like period, i.e., $502.50.

MS. WILSON'S LOST WAGES
Defendants next argue that the trial court abused its discretion in awarding Ms. Wilson loss of wages for a five week period. The defendants rely on Ammons v. St. Paul Fire and Marine Insurance Co., 525 So.2d 60 (La.App. 3rd Cir.1988). In Ammons, we stated:
"Past lost earnings are susceptible of mathematical calculation from proof offered at trial and an award for this element of damages is not subject to the much discretion rule. Cookmeyer v. Langston, 487 So2d 525 (La.App. 4th Cir. 1986); Young v. South Central Bell Telephone Company, 412 So2d 147 (La. App. 4th Cir.1982)."
The defendants argue that Dr. Rayburn released Ms. Wilson to go back to work on February 12, 1988 and, accordingly, she should not be allowed recovery beyond that date. We disagree. The record reflects that the February 12th release was conditional. In this regard, Dr. Rayburn testified:
"She could return back to work as she became accustomed to working. As she felt the pain was decreasing, she could begin slowly back to work part time ... She could begin back to work to see how she would be able to tolerate the work, and to call me if she had any trouble with it."
Ms. Wilson returned to work on February 23, 1988. The trial court awarded $2,250.00 for a total of five weeks lost wages at $450.00 per week. We find no error in this award.
Finally, the defendants argue that the award for lost wages should be reduced by $700.00, the amount received by Ms. Wilson from her employer during her convalescence. In support of this argument, defendants cite jurisprudence which disallows wage loss recovery where the employee continues to be paid by the employer. The record is not clear concerning the nature of this $700.00 payment, i.e., whether it constituted wages or was an advance, a loan or a gift. The payroll record indicates *618 same to be an advance. The trial judge, in his written reasons for judgment, opined that "the defendants are not entitled to benefit from this gift". We discern no clear error in this finding.
Accordingly, for the foregoing reasons, we amend the judgment of the trial court and recast same to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment rendered herein in favor of plaintiff, Raymond Rosenthal, and against Mid-American Indemnity Company and Robert Smith, in solido, in the full and true sum of $10,799.71, with legal interest thereon from date of judicial demand until paid;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment rendered herein in favor of plaintiff, Carol Wilson, and against Robert Smith in the full sum of $9460.25, of which $9,200.29 of said amount being against Mid-American Indemnity Company, in solido, with Robert Smith and $259.96 being against Louisiana Insurance Guaranty Association, in solido, with Robert Smith. All together with legal interest from date of judicial demand until paid;
Mid-American Indemnity Company is cast for all costs of these proceedings at the trial level and on appeal.
AFFIRMED AS AMENDED.
NOTES
[1] Champion was declared insolvent and replaced by Louisiana Insurance Guaranty Association pursuant to La.R.S. 22:1376 et seq.
[2] Rosenthal was allowed rental for a substitute automobile for 156 days (5 months) at $34.63 per day and storage for 190 days (6 months plus) at $7.50 per day.