617 So.2d 164 (1993)
Jay W. SIMAR, individually and On Behalf Of his Minor Children, Jaret Simar and Seth Louis Simar, and Dessie Simar, Plaintiffs-Appellees,
v.
NOWCAM SERVICES, Defendant-Appellant.
No. 92-643.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
*165 Denise A. Vinet, Baton Rouge, for Jay W. Simar, etc.
Douglas C. Longman Jr., Ian Alexander Macdonald, Lafayette, for Nowcam Services.
Charles V. Musso Jr., for Lake Charles, CUI.
*166 Before GUIDRY, KNOLL and WOODARD, JJ.
KNOLL, Judge.
This is a personal injury suit which arose from an oil field accident which occurred on July 12, 1989. The single issue on appeal concerns the reasonableness of certain elements of plaintiffs' recovery.
As a result of an accident, plaintiff, Jay W. Simar, an employee of B & L Well Service, suffered injury to his neck and head. Simar and his wife, Dessie, and their two children, Jaret and Seth, sued NOWCAM Services alleging that Simar's injuries were caused by the negligence of a NOWCAM employee. The jury found that NOWCAM was 100% at fault and awarded damages as follows:

 1.) Past Medical Expenses $19,000.00
 2.) Future Medical Expenses 7,000.00
 3.) Past Lost Earnings 39,000.00
 4.) Future Lost Earnings Capacity 20,000.00
 5.) General Damages 105,000.00
 6.) Loss of Consortium:
 (a) Dessie Simar 10,000.00
 (b) Jaret Simar 5,000.00
 (c) Seth Simar 5,000.00
 -----------
 TOTAL AWARD: $210,000.00

The trial court granted defendant's motion for judgment notwithstanding the verdict and lowered plaintiffs' total award to $170,102.92 as follows:

 1.) Past Medical Expenses $ 18,624.67
 2.) Future Medical Expenses -0-
 3.) Past Lost Earnings 19,478.25
 4.) Future Lost Earnings Capacity 20,000.00
 5.) General Damages 105,000.00
 6.) Loss of Consortium:
 (a) Dessie Simar 5,000.00
 (b) Jaret Simar 1,000.00
 (c) Seth Simar 1,000.00
 -----------
 TOTAL ADJUSTED AWARD $170,102.92

NOWCAM appeals from this judgment and assigns five errors. Specifically, NOWCAM asserts that the following damage awards are excessive: past medical expenses, past lost earnings, future lost earnings capacity, general damages, and the children's loss of consortium. Plaintiffs did not answer the appeal nor did they directly appeal the trial court's judgment; therefore, we will not consider their argument in brief that certain awards should be increased. LSA-C.C.P. Art. 2133.

FACTS
Simar was injured while helping NOWCAM employees remove aluminum support legs from the coil tubing unit of a workover oil rig. While handling one of the legs, Simar was struck squarely on the head by another leg which had been placed against a mud tank by a NOWCAM employee. Simar, who was wearing a hard hat, fell to the platform. He initially complained of neck pain, and a burning sensation between his shoulder blades, and was unable to continue working on that day.
Dr. Louis Shirley, a general practitioner and Simar's treating physician, first examined Simar on July 13, 1989, the day after the accident. Simar could not turn his head up or sideways and had lost his ability to bend forward. He initially complained of neck pain and a burning sensation between his shoulder blades. Dr. Shirley found no dislocations or fractures, but believed Simar to have a severe neck sprain. He immediately began physiotherapy and prescribed anti-inflammatory medicine and pain medication. Dr. Shirley continued to treat Simar through the trial date.
During the initial period of treatment, Dr. Shirley referred Simar to Dr. William Foster, a neurosurgeon. Dr. Foster's report showed that Simar possibly had a concussion. After performing a myelogram, he ruled out the possibility of disc abnormalities. Dr. Shirley also referred Simar to an orthopedic specialist, Dr. R. Dale Bernauer, who initially felt that Simar suffered from a cervical and thoracic strain. After performing a myelogram, a CT scan, an EMC nerve conduction test, and a MRI, he concluded that Simar did not suffer from a disc problem. Dr. Bernauer believed that Simar suffered pain, but opined that he exaggerated his complaints. Dr. Shirley opined that any exaggerations were probably due to the severe depression Simar was experiencing. Dr. Bernauer eventually released Simar to return to work.
Although disc problems were ruled out, Simar continued to suffer neck, shoulder, *167 and arm pain, and 6 months after the injury, complained of lower back and leg pain. Dr. Shirley diagnosed Simar with myofibrositis, inflammation of muscular tissue, surrounding the cervical spine. He based his diagnosis on objective findings of muscle spasms, positive results of Kernig's tests for the sciatic nerve, and positive results on leg raises, and on Simar's subjective complaints. Dr. Shirley stated that he has treated patients with this type of injury on numerous occasions, and this injury cannot be detected on any of the diagnostic tests performed by the other physicians. He testified, as did Simar, that Simar suffers from chronic neck and back pain, and severe depression, and cannot return to work in the oil field. Dr. Shirley opined that Simar will have pain problems for the rest of his life, will need to take pain medication regularly, but will not need future surgery.
Dr. James McDaniel, an orthopedic surgeon, performed an independent medical examination on Simar on November 19, 1990. He noted that a myelogram and CT scan revealed no signs of disc injury. He disagreed with Dr. Shirley's diagnosis of myofibrositis, stating that Simar did not have the inflamed muscular nodules associated with this condition. He further testified that Simar had a normal cervical range of motion and no muscle spasms. According to Dr. McDaniel, if Simar was suffering from myofibrositis he should exercise. Dr. McDaniel concluded that the persistent pain complained of was probably caused by some activity or movement in Simar's everyday lifestyle which perpetuated the pain. He opined that the severity of the injury was inconsistent with a two year period of debilitation pain.
Simar testified that the blow to his head initially caused a pinching feeling in his neck. The pain progressed to his shoulders, head, and eventually, along his spine to his waist area. He first complained of lower back and right leg pain to Dr. Bernauer in May of 1990, ten months after his injury. Dr. Bernauer ruled out any connection between this new pain and the accident. He stated that he is still in constant pain, which is aggravated by almost any activity. Simar described his pain medication as ineffective and further stated that he slept with great difficulty. He stated that he could not work because he was unable to stand on a hard surface for more than 30 minutes. Simar stated that he has not sought any light duty work since the accident because he does not think he could handle it. Moreover, he testified that he could not engage in his usual active lifestyle of hunting, fishing, and playing recreational sports. Simar denied that he was exaggerating the severity of his pain, stating that the pain became increasingly worse over time. At the time of his injury, Simar was earning $7.50 per hour while doing rig work and $5.00 per hour while working in B & L's yard.
Simar's wife, Dessie, testified that her husband has been in constant pain since his injury. It has hindered his ability to care for his two children, Jaret and Seth. Since the accident, he can no longer perform household chores or enjoy recreational activities such as family outings. Dessie explained that she has not sought work because she feels her primary responsibility is to care for her children. She felt that her husband was not faking or exaggerating his pain.
Glenn Hebert, a vocational rehabilitation specialist, testified that Simar will have difficulty obtaining alternate work until he reaches maximum medical improvement. Until then, he is capable of earning between $4.25 and $5.00 per hour. However, Hebert emphasized that most employers would not be willing to hire Simar if his complaints of pain persist. It was his understanding that Simar was not looking for work because of his depression.

QUANTUM
NOWCAM does not contest the finding of the jury that it was 100% at fault in causing this accident and resulting injury. Thus, the only issue before this court is the reasonableness of the awards in the trial court's judgment notwithstanding the verdict.

*168 Standard of Review

A judgment notwithstanding the verdict should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of the evidence in favor of the mover. On review, the court must examine the record and determine whether the trial court's conclusions in this respect were manifestly erroneous. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985), writ denied, 476 So.2d 353 (La.1985). In reviewing the trial court's decision granting judgment notwithstanding the verdict, the appellate court must consider the facts in the light most favorable to the party that opposed the motion at trial, drawing all reasonable inferences most favorable to that party. Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583 (La. App. 4th Cir.1991), writ denied, 590 So.2d 593 (La.1992); Romero v. Emerson Electric Company, 583 So.2d 544 (La.App. 3rd Cir.1991), writ denied, 589 So.2d 1054 (La. 1991). Although plaintiffs opposed the motion for JNOV at trial, they have not appealed nor answered NOWCAM's appeal. Therefore, no amendment of the JNOV favorable to plaintiffs is authorized. Under these circumstances, we believe that the awards made in the JNOV should be reviewed under the manifest error standard with all reasonable inferences being considered in a light most favorable to appellees.
In light of these principles, we turn to the individual elements of damage of which NOWCAM complains.

Past Medical Expenses
The trial judge lowered the amount of this award from $19,000.00 to $18,624.67, finding that this was the amount stipulated to by the parties as medical expenses to the date of trial. NOWCAM concedes that this amount was the subject of the stipulation, but it argues that the plaintiffs failed to establish a causal connection between the accident and the medical expenses.
The test to be applied by the trial court is whether the plaintiffs have shown through medical testimony that, more probably than not, the subsequent medical treatment was necessitated by trauma suffered in the accident. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 156 (La. App. 3rd Cir.1990), writ denied, 565 So.2d 450 (La.1990). This determination, being factual in nature, is subject to the manifest error/clearly wrong standard of appellate review. Rosell v. ESCO, 549 So.2d 840 (La.1989). The parties stipulated that medical payments made prior to May 14, 1990, were $14,528.08 and medical payments after that date were $4,096.59. May 14, 1990, is the date upon which Dr. Bernauer released Simar to return to work. NOWCAM argues that the entire amount should be reversed or, in the alternative, the $4,096.59 incurred after the release date should be reversed.
Based on a thorough review of the record, we find that the trial court's quantum award for past medical expenses is not manifestly erroneous. None of the medical experts who testified stated that the tests conducted on Simar were unnecessary or not conducted in an effort to determine the source of his pain. Simar had serious complaints of pain consistent with a herniated disc diagnosis. The connexity between the injury and the tests and examinations performed is not severed simply because those tests and examinations produce negative results. Medical tests and examinations are inherently designed to narrow the field of possible diagnoses in an effort to determine the cause of the patient's medical problems. While Drs. Bernauer and McDaniel theorized that Simar was possibly exaggerating his pain, this is not sufficient to undermine the trial court's finding that the subsequent medical treatment was necessitated by trauma suffered in the accident. Viewing the evidence in the light most favorable to plaintiffs, we conclude that his award was not manifestly erroneous.

Past Lost Earnings
The trial judge lowered the jury's award for past lost earnings from $39,000.00 to $19,478.25. It based this reduction on Simar's *169 average yearly income $8,657 for the six years prior to his injury. The award represented two and one-half years of lost wages. NOWCAM urges that his award should be lowered to $8,657, representing only one year of average lost wages.
Past lost earnings are susceptible of mathematical calculation from proof offered at trial and an award for this element of damages is an exception to the much discretion rule. Rosenthal v. Mid-American Indemnity Company, 572 So.2d 613 (La.App. 3rd Cir.1990), citing Ammons v. St. Paul Fire and Marine Insurance Company, 525 So.2d 60 (La.App. 3rd Cir. 1988), writ denied, 525 So.2d 1045 (La. 1988). After a thorough review of the record, especially Simar's income records, we conclude that the trial court's calculation was reasonable given the particular circumstances of this case. We find no manifest error in this award.

Future Lost Earnings Capacity
The trial court awarded Simar $20,000 for his future lost earnings capacity. NOWCAM contends that there is no evidence in the record to support his award.
Future lost earnings capacity is determined by comparing plaintiff's earning ability after injury with his earning ability prior to injury and his prospects for increased productivity. It may include probable future loss of earnings which a claimant is deprived of by reason of inability to work or a period of time where no specific separate award is made for future lost earnings. Factors to be considered include age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and inflation. Guidry v. Sam Grimmett, Inc., 557 So.2d 249 (La.App. 3rd Cir.1988), writ denied, 558 So.2d 557 (La. 1989). Impairment of earnings capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed. LeBleu v. Dynamic Industrial Contractors, Inc., 526 So.2d 1184 (La. App. 3rd Cir.1988), writ denied, 528 So.2d 154 (La.1988).
The record reveals that, prior to his injury, Simar was earning either $7.50 per hour or $5.00 per hour depending on the location of his work. Hebert stated that Simar could earn as much as $5.00 per hour with the qualification that he probably would not be hired by an employer because of his constant complaints of pain. Both Drs. Bernauer and McDaniel stated that, in their medical opinion, Simar was capable of returning to his former line of work. On the other hand, Dr. Shirley disagreed expressing the opinion that Simar's chronic pain will continue for some additional period and interfere with his earning ability. In light of this contradictory evidence, we are unable to discern any clear error in the trial court's award in this respect.

General Damages
The jury awarded Simar $90,000 for "physical and mental pain and suffering; past, present and future, and permanent disabilities" and $15,000 for "loss of enjoyment of life." The trial judge did not reduce this award in the judgment notwithstanding the verdict. NOWCAM asserts that the award is unreasonably excessive under the circumstances. We affirm the trial court's general damage award. Before a trial court's award for damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Ferguson v. Village of Dry Prong, 580 So.2d 1015 (La.App. 3rd Cir.1991), writ denied, 585 So.2d 570 (La.1991). The jury may adopt or reject conclusions of experts, according to its own best judgment, giving them weight as they see fit. Arceneaux v. Koch, 567 So.2d 786 (La.App. 3rd Cir.1990). A trier of fact may find adequate proof of a disability by way of testimony of subjective complaints of pain despite the lack of objective symptoms. Gates v. Ashy Construction Co., 171 So.2d 742 (La.App. 3rd Cir.1965), writ denied, 173 So.2d 542 (La. 1965). Factors to consider in assessing damages for pain and suffering include the *170 severity and duration thereof. Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3rd Cir. 1990). In this case, we must determine whether this jury award for Simar's particular injuries and their effects on him is a clear abuse of the jury's discretion. See, e.g., Rosenthal v. Mid-American Indem. Co., 572 So.2d 613 (La.App. 3rd Cir.1990).
The jury apparently accepted Dr. Shirley's diagnosis of myofibrositis and believed that Simar suffered serious pain and depression from this painful and debilitating muscle injury. This is not to say that the jury discounted the findings of Drs. Bernauer and Foster, who merely determined that no disc problems existed. The jury awarded general damages of $105,000 based on a determination that Simar suffered from severe chronic pain and depression, which detrimentally affected his ability to work and enjoy life. The record does not support a finding that the award is excessive or an abuse of discretion. Accordingly, we affirm the trial court's general damage award.

Children's Loss of Consortium
The trial judge awarded Simar's children, Jaret and Seth, $1,000 each for their loss of consortium.[1] NOWCAM challenges this award as being unsupported by the evidence. Both Simar and his wife, Dessie, testified that he was unable to care for his children as well as before. Simar was also unable to attend family outings or play with his children. In this respect, his children were deprived of their father's aid, assistance, and companionship. In light of this evidence, these awards are not clear error or an abuse of discretion.

DECREE
For the above and foregoing reasons, the judgment of the trial court in favor of plaintiffs, Jay Simar, individually and on behalf of his minor children, Jaret Simar and Seth Simar, and Dessie Simar, and against defendant, NOWCAM Services, is affirmed in its entirety. All costs of this appeal are assessed to defendant-appellant, NOWCAM Services.
AFFIRMED.
GUIDRY, J., dissents in part and assigns reasons.
GUIDRY, Judge, dissenting in part.
The jury awarded Simar $90,000 for "physical and mental pain and suffering; past present and future, and permanent disabilities" and $15,000 for "loss of enjoyment of life". The trial judge did not reduce this award in the judgment notwithstanding the verdict. NOWCAM asserts that the award is unreasonably excessive under the circumstances. I agree.
Factors to consider in assessing damages for pain and suffering include the severity and duration thereof. Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3rd Cir.1990). It is well settled that, in a personal injury action, general damages must be reasonably based upon competent medical evidence. The records reveals that, at worst, Simar suffered an inflammation of the musculature surrounding his neck and a concussion. This injury, according to plaintiff, caused a great deal of chronic pain. Even taking into account that the jury and judge may have accepted the opinion of Dr. Shirley and completely disregarded the testimony of Drs. Bernauer and McDaniel, I believe that, under the facts of this case, the trial judge committed manifest error in not lowering this $105,000 general damages award in the judgment notwithstanding the verdict. This award is not supported by the evidence in the record. In my judgment, the highest reasonable award for general damages within the trial court's discretion, given Simar's muscle strain, inflammation, and concussion along with the resulting pain, is $65,000. For these reasons, I respectfully dissent in part.
NOTES
[1] Although this award seems low and the judgment notwithstanding the verdict unwarranted, plaintiffs did not appeal directly or answer the appeal, thus we may not increase the loss of consortium award.