682 So.2d 993 (1996)
Newty Paul GAUTHIER, et ux. Plaintiffs-Appellees,
v.
KANSAS CITY SOUTHERN RAILWAY CO., et al. Defendants-Appellants.
No. 96-529.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
Writ Denied January 24, 1997.
Howard N. Nugent Jr., D. Reardon Stanford, Alexandria, for Newty Paul Gauthier.
Mark Ellis Gilliam, Shreveport, David Stuart Kelly, Nicole Martin, New Orleans, for Kansas City Southern Railway Co., et al.
Before WOODARD, DECUIR, and PETERS, Judges.
DECUIR, Judge.
This appeal arises out of a collision on October 6, 1994, between a train owned and operated by defendant, Kansas City Southern Railway Company, and a "cherry-picker" operated by plaintiff, Newty Paul Gauthier. At the time of the accident, plaintiff was employed by T.L. James & Co., Inc. and was engaged in the construction of an overpass on Hwy. 165 over railway tracks at Rocky Bayou in Pineville, Louisiana. Plaintiff was operating a "cherry picker" device under the partially constructed overpass when he was struck by the Kansas City Southern train. *994 Plaintiff and his wife, Shirley Gauthier, filed suit against Kansas City Southern and its employees, W.N. Davis, David Gallien and Bill G. Thomas. After a judge trial on the merits on July 19 and 20, 1995, the trial court rendered judgment in favor of plaintiffs awarding to Newty Gauthier general damages in the amount of $450,000, past medical expenses of $76,366.23, future medical in the amount of $20,000, lost wages of $16,298, and loss of future earnings in the amount of $420,533. Shirley Gauthier was awarded $20,000 for loss of consortium.
Defendants appeal contending that the trial judge erred in awarding loss of future earnings on the assumption that plaintiff would never work again; and alternatively, erred in failing to adjust the future earnings award to reflect plaintiff's ability to earn at least minimum wage in future employment. Plaintiffs answered the appeal contending the general damage award is inadequate and insufficient.
Before plaintiff can recover for future loss of wages, he must prove the loss with reasonable certainty; however, such damages need not be proven with mathematical certainty. Futrell v. Scott Truck & Tractor Co., 629 So.2d 449 (La.App. 3 Cir.1993), writ denied, 635 So.2d 232 (La.1994). Factors to be considered in determining future loss of earnings include age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability and inflation. Simar v. NOWCAM Servs., 617 So.2d 164, 169 (La.App. 3 Cir.1993), citing Guidry v. Sam Grimmett, Inc., 557 So.2d 249 (La.App. 3 Cir.1989), writs denied, 558 So.2d 557 (La.1990). [S]ound judicial discretion must be exercised after all proper considerations are weighed. Id.
The manifest error rule governs the review of awards for loss of earning capacity. "The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record." Veazey v. State Farm Mut. Auto. Ins., 587 So.2d 5, 7 (La.App. 3 Cir.1991) (citation omitted). A relevant factor to consider in determining future earning capacity is what plaintiff may now earn given his resulting condition.
At the time of the accident plaintiff had an eighth grade education, was twenty-eight years old and was earning $10 an hour. Dr. Randy Rice, plaintiffs' economic expert, projected a loss of future earnings in the amount of $420,533, based upon the assumption that plaintiff would not be able to earn any wages in the future. Dr. Rice admitted that if the plaintiff could earn $5 per hour, then the projected loss of future earnings would be reduced by fifty percent. The trial court stated in reasons for judgment, "the plaintiff will never be the same and will never return to manual labor." We review the record to determine whether the evidence supports a finding that plaintiff will never be able to engage in any employment.
As a result of the accident, plaintiff sustained fractures of both thigh bones, fracture of the left leg below the knee and fracture to the knee itself, a large open wound of the left arm and fracture of the humerus of the left arm with multiple bone fragments, and radial nerve injury of the left arm. Plaintiff also fractured a front tooth requiring extraction and bridge replacement. Dr. Louis Perdue, orthopedic surgeon, saw plaintiff in the emergency room after the accident and subsequently performed three surgeries involving the left arm and legs. Dr. Perdue discharged the plaintiff, who was confined to a wheelchair, from the hospital on October 26, 1994. The plaintiff became ambulatory with crutches on December 28, 1994. Seven weeks after the accident, plaintiff began to complain of low back pain. Dr. Perdue testified that plaintiff had some degenerative changes on X-ray that preexisted the accident, with no evidence of disc injury. When asked if the back complaints could be attributed to the accident, Dr. Perdue stated: "I'm really gonna stay kind of neutral on what relationship the injury had to the back pain, because I really don't know." At any rate, Dr. Perdue characterized plaintiff's back condition as back strain.
*995 Dr. Perdue last examined plaintiff on June 19, 1995. At that time, according to Dr. Perdue, plaintiff had "pretty well fully recovered" as far as his right femur fracture. The left femur fracture was doing well, but plaintiff still had problems as a residual of his left knee injury. As to the lower leg, Dr. Perdue stated he believed it was healed, but he was "still watching it." Dr. Perdue testified that the radial nerve palsy condition was resolved. At the time of trial, plaintiff was ambulatory with one crutch and Dr. Perdue testified, "he's not ready to return to heavy labor at this time." Dr. Perdue assigned a 35% impairment of the left lower extremity. Dr. Perdue never ruled out future employment. In fact, Dr. Perdue testified there are certain jobs at which plaintiff could compete such as operating heavy machinery or jobs for which he had a special skill that may not be particularly affected by his injuries. He further stated that in the long term, he did not expect the left arm and elbow to be a particular factor in plaintiff's job activities. Dr. Perdue assigned a 20% whole body impairment.
Dr. Perdue's testimony was the only evidence adduced regarding plaintiff's loss of earning capacity; it was never established through Dr. Perdue's testimony that plaintiff would never be able to engage in any gainful employment. To the contrary, Dr. Perdue testified that once everything is healed, in six to twelve months, he would allow plaintiff to do whatever he feels able to do.
Considering the law and the evidence, we find that the trial court was manifestly erroneous in awarding future loss of earnings based on the assumption that plaintiff would never be able to return to manual labor. Based on the testimony of plaintiffs' economic expert and in light of the fact that plaintiff's own physician opined that he could return to some employment in the future, we conclude that plaintiff would be employable at least at the rate of $5 an hour and therefore reduce the award for future loss of earnings to $210,266.50.
Finally, plaintiffs contend that the award of $450,000 in general damages constitutes an abuse of discretion under the facts of this case. Our initial inquiry is "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Id. 1261. We find no abuse of the trial court's discretion and affirm the award of general damages in the amount of $450,000.
Costs of appeal are assessed equally to appellants and appellees.
AFFIRMED AS AMENDED.