NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-506

JAMES E. MCCRORY

VERSUS

CAN DO, INC., ET AL.

**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-16413
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Charles V. Musso, Jr.
Plauche, Smith & Nieset
P. O. Box 1705
Lake Charles, LA 70602
(337) 436-0522
Counsel for Defendant/Appellee:
    Lake Charles Pilots, Inc.

Lawrence N. Curtis
Attorney at Law
P. O. Box 80247
Lafayette, LA 70598-0247
(337) 235-1825
Counsel for Plaintiff/Appellant:
    James E. McCrory

**Hunter William Lundy**
**Lundy & Davis**
**P. O. Box 3010**
**Lake Charles, LA 70602**
**(337) 439-0707**
**Counsel for Defendants/Appellees:**
  **Asphalt Associates, Inc.**
  **West American Insurance Co.**
  **Dockwise USA, Inc.**
  **Dockwise Shipping B.V.**
  **Shelf Company Management Services, Ltd.**
  **The Standard Club**

**Elizabeth O. Clinton**
**John B. Peuler**
**Peuler & Ernst**
**701 Poydras Street, Suite 3845**
**New Orleans, LA 70139**
**(504) 587-7107**
**Counsel for Defendant/Appellee:**
  **Can Do, Inc.**

**DECUIR, Judge.**

James McCrory filed suit under general maritime law after sustaining injuries while fishing in a Cameron Parish shipping channel in the vicinity of an ongoing large scale shipping operation. After settling immediately after the accident with the owner of one tug boat involved in the incident, McCrory named several other defendants: Can Do, Inc. and Doucet and Adams, Inc., the owners of two other tug boats; GlobalSantaFe Drilling Company, the owner of a jack-up drilling rig; Dockwise Shipping USA, Inc., the owner of the semi-submersible transport vessel which was the center of the operation; and Lake Charles Pilots, Inc., the employer of the two Louisiana licensed pilots assigned to assist the transport vessel through the shipping channel. Prior to trial, McCrory's punitive damage claims against all defendants were dismissed via summary judgment. The claims against Doucet and Adams and GlobalSantaFe were dismissed by joint motion of the parties.

The remaining negligence claims were tried before a jury in August of 2005. The jury assessed 93% comparative fault to McCrory and 7% fault to Belle Pass Towing Corp., the company which had settled with McCrory shortly after the accident and, thus, was not a named defendant in this suit. The jury assessed special damages at $3,158.06, which is seven percent of McCrory's stipulated medical damages of $45,115.20. No general damages were awarded.

Weeks after the conclusion of the trial, Hurricane Rita struck Cameron Parish and all trial exhibits pertaining to this matter were destroyed. Counsel for the parties reconstructed those exhibits for this court's perusal. The plaintiff suffered great personal loss as a result of the hurricane, which delayed his appeal. See *McCrory v. Can Do, Inc.,* 06-982 (La.App. 3 Cir. 9/6/06), 938 So.2d 802, *writ denied*, 06-2406 (La. 12/8/06), 943 So.2d 1086 and 08-506 (La.App. 3 Cir. 6/18/08), 987 So.2d 846,

*writs denied*, 08-1735, 08-1633 (La. 10/24/08), 992 So.2d 1038, for this court's opinions regarding the timeliness of this appeal, and further post trial proceedings.

**FACTS**

The evidence in the record before us shows that on December 4, 2001, McCrory and his friend, Maurice Choates, were fishing aboard McCrory's seventeen foot aluminum boat, which was tied to a navigational beacon in or near the Calcasieu Ship Channel. In the same vicinity, a jack up drilling rig had just been moved from a drilling barge to the M/V Transshelf, a semisubmersible ocean going vessel, for transport to Trinidad. Three tug boats, the M/V Lady Neva, the M/V Elizabeth Adams, and the M/V Harris B. Doucet, were used to move the barge onto the M/V Transshelf. Then, the rig was secured, the barge slid out, and the submerged portion of the M/V Transshelf was raised. At that point, the 600 foot M/V Transshelf had to turn around in the 400 foot wide shipping channel to return to the Gulf of Mexico. This entire process is complicated, dangerous, and time-consuming, taking twenty-four to thirty-six hours to complete.

Shortly before the M/V Transshelf began its maneuver to turn towards the Gulf, the plaintiff's fishing boat was noticed by some of the boats. The record contains disparate testimony regarding whether one of the tug boat captains, Captain Reynolds Curole, Jr. of the M/V Elizabeth Adams, warned McCrory about the danger of his location and advised him to leave the area. Captain Curole described in detail how he warned the fishermen verbally and with a five-blast warning signal. He then advised the pilots on the M/V Transshelf of the warning, which they both acknowledged in their testimony. One of the pilots on the M/V Transshelf, Malcolm Gillis, further testified that the Transshelf itself sent a five-blast danger signal to the

2

fishermen. McCrory stated that he heard no warning signal or instruction to leave the area. Regardless, McCrory stayed where he was. He testified that he was aware of the activity going on around him and saw one of the anchors of either the M/V Transshelf or the rig go up. Some of the boats looked as though they were "dead in the water" and not doing anything. He did notice that one of the tug boats had left the area. Suddenly, McCrory "realized that the whole operation was in my lap." As he hurriedly tried to untie his boat, the tug M/V Lady Neva started its engine and the ensuing rush of water flooded the small fishing boat. The boat capsized. The 89-year-old Choates was pulled from the water, while McCrory swam to shore. McCrory's hand was injured as it caught on his rope as the boat sank. Choates died of unrelated causes prior to trial.

## ANALYSIS

The jury found fault only with McCrory and the captain of the M/V Lady Neva. After reviewing the testimony of the captains of each boat, the pilots on board the M/V Transshelf, and the plaintiff himself, we find no error in the factual conclusions reached by the jury regarding the apportionment of fault. The question of whether McCrory was warned of the dangerous situation surrounding him was a credibility determination properly addressed by the jury. The testimony of the plaintiff showed him to be a very experienced fisherman who simply failed to notice the danger surrounding him. On the other hand, the captains and pilots in the transport operation either could not have known of the plaintiff's presence or did what they could to warn him of the danger.

McCrory assigns as error the jury's failure to answer an interrogatory which questioned whether Dockwise was negligent and whether this negligence was a legal

3

cause of the accident. The jury did not respond to this question. However, in a separate interrogatory, the jury assigned zero percent negligence to Dockwise, leaving no doubt as to the factual conclusion regarding the alleged fault of Dockwise. *See, similarly, Ardoin v. McKay*, 06-171 (La.App. 3 Cir. 9/27/06), 939 So.2d 698, *writ denied*, 06-2606 (La. 1/8/07), 948 So.2d 126. Consequently, the jury's failure to answer the interrogatory does not warrant reversal or *de novo* review as requested by McCrory.

We decline to conduct a *de novo* review of the record because we find no deficiencies in the jury instructions read by the trial court. McCrory urges this court to find error in the failure to include a requested jury charge pertaining to the "dominant mind" theory, under which, he argues, both the pilots and the crew of the M/V Transshelf would have been found liable as they were in charge of the entire operation. McCrory also contends the jury instructions misled the jury by stating that any fault on the part of the pilots had to be proved with clear and convincing evidence of gross negligence or willful misconduct, as set forth in La.R.S. 34:1137. We find the jury instructions to be a correct statement of the law.

The "dominant mind" theory is a doctrine in maritime law used to impose liability for a collision on either the tow or the tug, depending on the type of operation and which vessel is actually in charge. *Marathon Pipeline Co. v. Drilling Rig Rowan/Odessa* 527 F.Supp. 824 (E.D. La. 1981). The trial court's instructions to the jury included several statements regarding the control of the different captains and pilots in this operation, but did not include the term "dominant mind." In discussions between the bench and the attorneys, the plaintiff's counsel appeared to acquiesce in the absence of the term "dominant mind." Our review of the instructions convinces

4

us that the question of control was adequately addressed without the necessity of the term or the specific instruction requested by the plaintiff.

McCrory's complaint regarding the La.R.S. 34:1137 jury instruction is similarly misplaced. Section 34:1137 provides as follows:

> Any party seeking to hold a pilot acting under his state commission issued in accordance with this Chapter liable for damages or loss occasioned by the pilot's errors, omissions, fault, or neglect shall be required to prove by clear and convincing evidence that the damages arose from the pilot's gross negligence or willful misconduct.

McCrory argues that because general maritime law defines the standard of care as ordinary care or reasonable care under the circumstances, as explained in *Kermarec v. Compagnie*, 358 U.S. 625, 9 S.Ct. 406 (1959), the Louisiana statute requiring a showing of gross negligence or willful misconduct on the part of a pilot is preempted and without effect. By contrast, defendant, Lake Charles Pilots, cites 46 U.S.C. § 8501 (a), which specifically reserves the regulation of pilotage to the states. We have considered the issue and find Lake Charles Pilots' position to be a correct statement of the law. Accordingly, we find no error in the jury instructions given by the trial court.

McCrory next alleges error in the dismissal of his punitive damages claim. While he is correct that maritime law does allow the recovery of punitive damages for acts which are willful, wanton, and in callous disregard for the safety of others, the plaintiff has a high burden of proof and must show bad faith on the part of the defendants. *Harper v. Zapata Offshore Co.*, 741 F.2d 87 (5th Cir. 1984). On summary judgment, the trial court determined that McCrory would not be able to meet this burden of proof at trial. Likewise, we find McCrory has presented no evidence of such willful or wanton conduct on the part of the defendants sufficient

5

to warrant reversal of the trial court's summary judgment. In fact, the plaintiff's expert, Captain John Manders, declined to characterize the accident as one involving gross negligence.

Finally, McCrory's remaining assignment of error contesting the jury's failure to award general damages is moot. While it is ordinarily true that the failure to award general damages is reversible error in cases where special damages have been awarded (see *Ammons v. St. Paul Fire & Marine Ins. Co.*, 525 So.2d 60 (La.App. 3 Cir.), *writ denied,* 525 So.2d 1045 (La.1988)), in this case, the allocation of fault is between the plaintiff himself and a party who is not a named defendant and is therefore judgment-proof. Accordingly, there is no need to quantify general damages in this case.

### DECREE

For the above and foregoing reasons, the judgment of the trial court is affirmed, at plaintiff's cost.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.